**Elana G. REEFER, now Elana
G. Black, Appellee,**

v.

**Gregory J. REEFER, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 15, 2001.
Filed Jan. 18, 2002.

Paula C. LaStrapes, Kittanning, for appellant.

James A. Favero, Kittanning, for appellee.

Before TODD, J., CERCONE, President Judge Emeritus, and Olszewski, J.

TODD, J.

¶ 1 Gregory T. Reefer ("Father") appeals the May 14, 2001 Order awarding primary physical custody of his son, Anthony James Reefer, to Anthony's mother, Elana G. Black ("Mother"). Upon review, we vacate and remand.

¶ 2 Father and Mother were married on September 12, 1992, and had one child, Anthony, who was born on November 11, 1992. Mother and Father were divorced on October 19, 1995. Pursuant to an agreement, Mother and Father shared legal and physical custody of Anthony. In January 1996, Mother began living with John Black. However in April 1996, Mother moved back into Father's house in Elderton, Armstrong County, and resided there with Father and Anthony until early 1998. In October 1996, while she was residing with Father, Mother gave birth to another son, Corey, fathered by Black. In or around June 1998, Mother moved with Anthony and Corey to Indiana County. However, in September 1998, by mutual agreement of the parties, Anthony moved back in with Father so that he could attend Kindergarten in Elderton. On November 12, 1998, Mother married John Black and moved with their son Corey to North Carolina. On March 31, 2001, Mother filed a petition to modify custody, through which she sought primary physical custody of Anthony. The trial court awarded Mother primary physical custody, and granted Father partial physical custody. Father now appeals.

¶ 3 Preliminarily, we note that our standard of review of child custody orders is broad:

[T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it.... However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination.... Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*Kaneski v. Kaneski*, 413 Pa.Super. 173, 178, 604 A.2d 1075, 1077 (Pa.Super.1992) (citing *McMillen v. McMillen*, 529 Pa. 198, 602 A.2d 845 (1992)).

¶ 4 On appeal, Father asks this Court to consider:

1.  Whether the trial court abused its discretion when it granted primary physical custody to the Mother and when it did not accurately use the record to determine the best interest of the child.

2.  Whether the trial court erred when it determined that paternal grandmother had *de facto* custody and when it decided that custody in this matter should be decided between grandmother and Mother instead of between Mother and Father.

3.  Whether the trial court erred when it failed to treat this matter as a relocation case and when it did not conduct the three-prong test and analysis as outlined in [*Gruber v. Gruber*, 400 Pa.Super. 174, 583 A.2d 434 (1990)].

4.  Whether the trial court erred by incorrectly examining the facts in evidence and by failing to determine the best interest of the child when it transferred custody of the child from shared legal custody and joint

physical custody and awarded primary custody to the mother.

(Appellant's Brief, at 4.)

¶ 5 We need not address all of the above issues, as we conclude that the trial court's decision must be vacated, and the case remanded, based on Father's second and third allegations of error, namely, the trial court's conclusion that Anthony's paternal grandmother had *de facto* custody and the trial court's failure to consider in its custody determination the factors set forth by this Court in *Gruber v. Gruber*, 400 Pa.Super. 174, 583 A.2d 434 (Pa.Super.1990).

¶ 6 The evidence of record indicates that when Father is out of town as a result of his employment, Anthony is cared for by his paternal Grandparents, who live next door to Father. Father has indicated, however, that Anthony has his own room at Father's house, and that when Father is home, he spends time with Anthony, takes him to school and has his meals with him. In its opinion, the trial court noted:

> Grandmother has been entrusted with the primary care of the child and she is indeed the primary caretaker of the child. Grandmother's house is within 50 feet of Father's house. The child has a permanent bedroom at Grandmother's house. It is well equipped with a computer, toys, etc. By Grandmother's own admission, she is much more than a babysitter. Even on those few school nights when the child sleeps at Father's house, Grandmother goes to Father's house in the morning to see that the child gets off to school with his Father. She takes the child to the doctor's office, dentist's office, etc. The Court notes that, at the hearing, Father did not know the names of the child's pediatrician, dentist, or optometrist.

(Trial Court Opinion, 4/20/01, at 3–4.) Based on these facts, the trial court concluded "while the Father has *de jure* pri-

mary physical custody of the child, his work related travel has transformed his own mother into the *de facto* primary physical custodian." (*Id.* at 6.) Thus, the trial court chose to view the evidence "as it would be in a parent versus grandparent custody dispute, rather than as in a normal parent versus parent case," and accorded Mother a presumptive right to custody, ultimately holding that the evidence was not sufficient "to carry the heavy burden of showing that the best interests of the child would be served by effectively awarding primary physical custody to Grandmother as a non-parent." (*Id.* at 6–7.)

¶ 7 However, this Court, in *Porch v. Porch*, 327 Pa.Super. 346, 475 A.2d 831 (1984), previously affirmed a custody award in favor of the father, and held that the trial court properly treated the custody dispute as one between the mother and father, rather than one between the mother and paternal grandparents, despite the fact that the children actually stayed with their paternal grandparents because of the father's work schedule. In doing so, we reasoned:

> The children live in a residence separate from their father's home only because of his erratic work schedule. As Mr. Porch explained, if the children were to sleep in his home, they would have to be awakened at 12:30 a.m. and returned home from their grandparents on those occasions when their father works until that hour. They would be similarly uprooted to meet his schedule when he worked from midnight to 8:00 a.m. In short Mr. Porch has been able to rely on his parents as caretakers. Instead of providing only day care they have taken it upon themselves to provide babysitting services at night as well in order to meet the needs of their son. They live next door to Mr. Porch who spends time with his children at his parents' home

and who, the court found, takes his meals at his parents' home with his children. This is not a case in which control of the children has been surrendered to the grandparents, rather, it is one in which a single father has sought and received help in the care of his children.

*Id.* at 350, 475 A.2d at 833.

■ ¶ 8 Based on our review of the transcript of the custody hearing in the instant case, we conclude that the trial court erred in treating this as a dispute between Mother and Anthony's paternal grandparents. As in *Porch,* this is not a case in which Father has surrendered control of Anthony to the paternal grandparents. Father explained that Anthony often stayed with his grandparents even when his Father was home because he normally works 12–hour days, sometimes working 36 hours straight, and would often sleep for 12 hours once he returned home. (N.T. Custody Hearing, 11/29/00, at 137.) Father further testified that although he was unable to attend many of Anthony's Cub Scout meetings due to his work schedule, he attended the most recent parent-teacher conference at Anthony's school. (*Id.* at 144, 152).[1] Although Anthony's paternal grandparents clearly are of great help to Father, we cannot agree that the evidence of record supports a finding that they have assumed *de facto* primary custody such that the evidence should be viewed as it would in a case between a natural parent and a third party.[2]

■ ¶ 9 Next, we consider Father's claim that the trial court erred in refusing to apply the factors set forth by this Court in *Gruber, supra,* **in its custody determination. In *Gruber,*** this Court held that a trial court must consider the following factors when a custody dispute arises from one parent's intent to locate out of the jurisdiction of the court:

[1]   the potential advantages of the proposed move and the likelihood that the move would substantially improve the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent;

\* \* \*

[2]   the integrity of the motives of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it; [and]

\* \* \*

[3]   the availability of realistic, substitute visitation arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent.

400 Pa.Super. at 184, 583 A.2d at 439.

¶ 10 In the instant case, the trial court refused to apply the factors set forth by this Court in *Gruber,* **stating:**

Although the evidence establishes that Mother relocated to North Carolina several years ago, this case is not controlled by *Gruber v. Gruber* .... In that case, the issue was whether a parent *with*

---

1.   While it is true that Father could not recall the name of the Anthony's pediatrician, we note that he did testify that Anthony went to Armstrong Pediatrics. (N.T. Custody Hearing, 11/29/00, at 152.) Additionally, when asked by Mother's attorney, Father indicated that he knew the name of Anthony's teacher,

Anthony's start and dismissal times at school, and Anthony's shoe, shirt, and pant size. (*Id.*)

2.   We do not suggest that the trial court may not consider the time Anthony spends with his grandmother in determining his best interests.

primary physical custody may relocate outside the Commonwealth.

This case is distinguishable from *Gruber* in that the Mother does not have primary physical custody of Anthony at this time, nor did she at the time of the move to North Carolina. Therefore, the Court will not consider the factors set forth in the *Gruber* decision.

(Trial Court Opinion, 4/20/01, at 5 (italics in original).)

¶ 11 We conclude that the trial court erred in failing to apply the *Gruber* factors in the instant case. The facts of this case are similar to those in *Clapper v. Harvey*, 716 A.2d 1271 (Pa.Super.1998), a case in which the mother, a non-custodial parent, filed a petition for modification of custody. The mother, who resided in Florida at the time, argued that "a proper 'best interests of the child' analysis in a case where the petitioning parent seeks to relocate the child to another jurisdiction includes consideration of the factors outlined in *Gruber*." *Id.* at 1274. This Court agreed:

As we stated in *Lambert v. Lambert*, 409 Pa.Super. 552, 560–562, 598 A.2d 561, 565 (1991), even in custody cases involving the relocation of one or both parents, the ultimate objective in resolving the custody matter remains the best interests of the child. The determination of a child's best interests involves the consideration of *all* relevant factors

that legitimately affect the child's physical, intellectual, moral and spiritual well-being. It follows then that the factors outlined in *Gruber*, if deemed relevant and likely to affect the child's physical, intellectual, moral, and spiritual well-being, should also be applied and considered in any custody case involving the relocation of either the custodial or non-custodial parent.

*Id.* (emphasis original) (citation omitted). Thus, the trial court should have considered the factors set forth by this Court in *Gruber* in determining whether to award primary physical custody of Anthony to Mother.[3]

¶ 12 For the reasons stated above, we vacate the trial court's order and remand this case to the trial court for a determination of custody applying, with respect to Mother and Father, the factors set forth by this Court in *Gruber*.

¶ 13 Order vacated. Case remanded. Jurisdiction relinquished.

---

**3.** We note that in its opinion, the trial court indicated that Father had *"de jure* primary physical custody" of Anthony. In her brief, Mother also argues that she did not have primary physical custody of Anthony at the time of her relocation, and, therefore, that she was a non-custodial parent. Father notes in his brief that at the time of Mother's relocation, the court order in effect was that of October 10, 1997, whereby the parties had shared legal and joint physical custody of Anthony. While we note these distinctions, we find them to be irrelevant in this case, in that this Court also has held that the *Gruber* factors are applicable and should be considered as part of an overall "best interests of the child" analysis in relocation cases where the parties have equal shared physical custody. *See Thomas v. Thomas*, 739 A.2d 206, 209 (Pa.Super.1999) (*en banc* ) (where there exist two primary family units, both must be scrutinized similarly in the examination of competing custodial environments); *McAlister v. McAlister*, 747 A.2d 390 (Pa.Super.2000); *Hurley v. Hurley*, 754 A.2d 1283 (Pa.Super.2000).