**Danielle DRANKO, Appellant,**

v.

**Bryan Andrew DRANKO, Appellee.**

Superior Court of Pennsylvania.

Submitted March 24, 2003.
Filed May 15, 2003.

John J. Elash, McKeesport, for appellant.

Jean M, Lupariello, Carnegie, for appellee.

BEFORE: BENDER, OLSZEWSKI and CAVANAUGH, JJ.

OPINION BY BENDER, J.:

¶ 1 Danielle Dranko (Mother) appeals from an order denying her petition for relocation and dismissing Bryan Andrew Dranko's (Father) petition for primary custody of the parties' two children. Mother contends that the court failed to consider an alternative visitation schedule in the context of a relocation case and erred in concluding that the proposed move would not improve the children's quality of life. We affirm.

¶ 2 This matter came before the trial court as a result of the parties' respective petitions. Subsequent to a hearing held on July 24, 2002, the trial court formulated the following findings of fact:

1. By Stipulation of the parties, Danielle Dranko (hereinafter "Mother"), is the primary physical custodian of the minor children, Zachary (DOB: 3–6–93) and Abigayle (DOB: 7–29–97). Further, the parties have never had a formal custody order since their date of separation in March, 2000 but, the credible testimony essentially supported that Father has had partial custody of the minor children every other weekend and, additionally, on more than one other occasion per week (as high as three (3) times per week), depending upon Mother's work schedule.

2. The event which has precipitated the filing of Mother's Relocation Petition is her engagement to Mr. Wayne Frazier, whom she met in a "chat room" on the Internet prior to her separation from Father and with whom she began having an intimate relationship immediately following the separation of the parties. Mother and Mr. Frazier became engaged to be married in December 2000, or approximately nine months following separation from Father. The relationship has continued to grow and develop over the last 18 months by daily, multiple telephone conversations, and either monthly or twice per month visits between them. Mother wishes to marry Mr. Frazier and to relocate to Valdosta, Georgia to live with him.

3. The essence of the testimony of Ms. Dranko and Mr. Frazier is that the largest factor in consideration of the improved quality of life for the minor children to relocate would be the "financial" situation with regard to a comparison to Allegheny County. Mother also testified that she would be able to resume

her college education more easily in Georgia than in this area.

4. Mother has no extended family relations in the Valdosta, Georgia area, other than half-siblings her father had from a previous relationship. There was no evidence of record that she has maintained any significant ongoing relationship with these half-siblings during her lifetime.

5. Mr. Wayne Frazier has previously been married and has two (2) children living in and about the Valdosta, Georgia area for whom he is financially responsible for child support and alimony to his ex-spouse, though this alimony responsibility is very close to termination. In addition, he has two (2) brothers in and about that metropolitan area. Mr. Frazier is a cabinetmaker and installer and testified that it would not be feasible for him to relocate his business to the Pittsburgh area and have any reasonable expectation of continuing his business at the level it presently enjoys.

6. While it is obvious that Mother was primarily responsible for the child rearing responsibilities when Mother and Father were living as an in-tact family and, further, that Father may have had little or no significant involvement in the day to day responsibilities with regard to the children, that has significantly changed since separation.

7. The parties were very young when they became parents of Zachary in March 1993. Mother's pregnancy with Zachary caused the parties to both withdraw from college and Father then began to pursue his alternative career in plumbing. During the early years of the parties' relationship, father worked two and sometime three jobs just to make ends meet. Mother essentially remained a stay-at-home mom during the term of the parties' relationship although she did get a part-time job in 1996 for one or two days a week and continued to work on a part-time basis through, and including, the time the parties separated in March 2000 and, in fact, up to the date of trial.

8. Since separation, Father has rarely if ever missed any of his alternating weekend visitation and has exercised other custody time with the children during each week depending upon Mother's work schedule as he apparently became her babysitter when she would go to work and when her parents were not otherwise available.

9. While the parties were an in-tact family, they lived immediately across the street from Mother's parents for a number of years. Thus, the maternal grandparents became very close to the minor children and have spent a considerable period of time watching them over the years.

10. Paternal grandfather and his wife of approximately eight (8) years, have also spent a considerable period of time involved in the lives of the minor children, especially since the parties separated.

11. Mother testified that she and Mr. Frazier are to be married as soon as her divorce is final by this Court, and that she loves Mr. Frazier very much and looks forward to a great life with him. She believes her life will be significantly better in Georgia because of her ability to live with her husband rather than apart from him; that she will be better off financially and more easily able to pursue her degree. The evidence was clear that Mother and Mr. Frazier would marry irrespective of the decision of the Court with regard to the Relocation Petition. Further, while Mother did not so testify, Mr. Frazier testified that if the Relocation Petition were denied, that the parties would marry but, Mother would remain in the Allegheny

County area and they would continue their relationship.

12. Father, Mother's father, and Father's stepmother testified credibly with regard to the substantial involvement each has in regard to the minor children. It was obviously very difficult for Mother's father to assume a position contrary to the desires of his own daughter. However, we were extremely impressed by the forthright nature of not only his testimony but also our observations of his presentation of that testimony. Regrettably, all knew this testimony would likely cause a substantial rift between the families. This became evident when observing the parties throughout his testimony and, further, by the nature of the cross-examination by Mother's counsel suggesting that the maternal grandfather's testimony was motivated solely out of selfish reasons to keep his grandchildren near him and his family.

13. The Court–Appointed Child Custody Evaluator, Dr. John Carosso provided in his report and testimony ample evidence to support his conclusion that he was unconvinced by the evidence presented to him by Mother and Mr. Frazier that it would be in the best interest of the children to move to Georgia. His recommendation was based not only upon the close family relationships the children enjoyed in this area but their adjustment to school and friends and their own desires as expressed to him that they did not want to move to Georgia. Dr. Carosso concluded that it would not be in the best interest of the children to relocate. His testimony was very credible.

14. While there may be some potential advantages associated with a move to Georgia for Mother and the children, they are unlikely to improve the quality of life for the children. Further, those potential advantages are far outweighed by the advantages available in Allegheny County.

15. While there is some skepticism generally about relationships that begin through the Internet, we would not characterize the request of Mother to move as the result of a momentary whim.

16. The integrity of each party, in either seeking to move or seeking to prevent it, is appropriate.

17. Mother has failed to convince the Court that the potential advantages of relocation would substantially improve the quality of life of the children. Accordingly, the Relocation Petition will be denied.

18. Father filed a Custody Complaint on June 21, 2001, seeking full custody of the minor children. We have considered the stipulation at trial, that Mother is primary physical custodian, to warrant a denial of the relief requested by Father.

19. Should Mother decide to relocate without the children, then Father shall become primary physical custodian subject to partial custody of Mother as the parties may agree or by subsequent Order of Court.

20. Should Mother remain in Allegheny County, the status quo custody arrangement will remain in place until modified by further Order of Court.

Trial Court's Findings of Fact (FOF), 7/31/02, at 1–5. Based on these findings, the court denied Mother's relocation petition and dismissed Father's petition for primary custody. Trial Court Order, 7/31/02.

¶ 3 Mother now appeals to this Court, and raises the following issues for our review:

1. Is the court required to attempt to fashion an alternate visitation arrangement that will serve to foster

an ongoing relationship between the children and the non-custodial parent in a relocation case?

2. Did the Court abuse its discretion in determining that the benefits associated with the proposed move testified to at the time of trial were not likely to improve the quality of life of the children?

Mother's brief at 14.

¶ 4 Initially, we note that this Court in *Graham v. Graham,* 794 A.2d 912 (Pa.Super.2002), set forth the following to guide our review of a custody order:

In reviewing custody matters, this court has stated that our scope of review is very broad. Nonetheless, a broad scope of review should not be construed as providing the reviewing tribunal with a license to nullify the factfinding functions of the court of the first instance. We have stated that an appellate court may not reverse a trial court's custody order absent a showing that the trial court abused its discretion.

*Id.* at 915 (quoting *Charles v. Stehlik,* 560 Pa. 334, 744 A.2d 1255, 1257–58 (2000)) (citations and quotation marks omitted).

■■ ¶ 5 "An abuse of discretion in the context of child custody does not consist merely of an error in judgment; it exists only when the trial court overrides or misapplies the law in reaching its conclusion or when its judgment is manifestly unreasonable or the result of partiality, prejudice, bias, or ill will, as shown by the evidence of record." *Wheeler v. Mazur,* 793 A.2d 929, 933 (Pa.Super.2002). "The ultimate test is 'whether the trial court's conclusions are unreasonable as shown by the evidence of record.'" *Id.* (quoting *Silfies v. Webster,* 713 A.2d 639, 642 (Pa.Super.1998)). Moreover, "[t]he paramount concern in a child custody case is the best interests of the child, based on a consideration of all factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being." *Wheeler,* 793 A.2d at 933 (quoting *Swope v. Swope,* 455 Pa.Super. 587, 689 A.2d 264, 265 (1997)). "This determination is to be made on a case by case basis." *Wheeler,* 793 A.2d at 933.

■■ ¶ 6 Moreover, because this matter involves an issue of relocation, the evidence must be reviewed in light of each of the factors enunciated in *Gruber v. Gruber,* 400 Pa.Super. 174, 583 A.2d 434 (1990), which must be applied under the "umbrella of the ultimate objective of determining the best interests of the child." *Anderson v. McVay,* 743 A.2d 472, 474 (Pa.Super.1999). *Gruber* requires the court to consider:

[1] the potential advantages of the proposed move and the likelihood that the move would substantially improve the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent;

. . .

[2] the integrity of the motives of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it; [and]

. . .

[3] the availability of realistic, substitute visitation arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent.

*Reefer v. Reefer,* 791 A.2d 372, 376 (Pa.Super.2002) (quoting *Gruber,* 583 A.2d at 439). Moreover, the burden of proof of the first prong is on the custodial parent requesting relocation. *Gruber,* 583 A.2d at 440. Finally, we note that "[o]n issues of credibility and weight of the evidence, appellate courts must defer to the findings of the trial judge who has had the opportunity to observe the proceedings and the demeanor of the witnesses." *Robinson v.*

*Robinson,* 538 Pa. 52, 645 A.2d 836, 838 (1994).

■ ¶ 7 Mother first argues that the court erred by not considering the availability of alternate visitation schedules, which she contends is "a mandatory exercise that effects both of the other analysis [sic] under the test set forth in *Gruber.*" Mother's brief at 20. Mother further contends that "[t]here is no language in the *Gruber* opinion that precludes the [c]ourt from attempting to fashion an alternate visitation schedule [even] if it does not find the necessary benefits to the custodial parent involved with the first prong of the test." *Id.*

¶ 8 In its opinion, the trial court responded to Mother's first issue as follows:

With regard to the first alleged error by the court, Mother seems to suggest that because no consideration was given to an alternate visitation schedule once the relocation occurred, that we failed to consider the third prong of the case of *Gruber v. Gruber,* 400 Pa.Super. 174, 583 A.2d 434 (1990). Mother's interpretation of this requirement is not particularly poignant. *Gruber* does explain that shifting visitation arrangements to account for geographical distances should only occur when the proposed move has been shown to offer real advantages to the custodial parent and the children. *Id.* at 439. Mother in her appeal here suggests that because Father only sees the children every other weekend and between once and thrice a week otherwise, that a visitation schedule from the Georgia area which would include all summer, and holidays and weekends, would actually allow Father more contact with the children than he otherwise has or enjoys now. Because we found that Mother had failed to convince us of the potential advantages of the relocation, which would substantially improve the quality of her life and the

lives of her children, and that the move was not therefore in the best interest of the children, we did not feel compelled to find that her proposed alternate custody plan would allow Father to have more contact with the children on an annualized basis. Clearly, he would not enjoy the every other weekend and one to three times per week visitation that he was accustomed to while the children lived in his same geographical area.

Trial Court Opinion (T.C.O.), 11/22/02, at 2.

■ ¶ 9 The thrust of the trial court's discussion centers on its conclusion that, without a finding that the relocation would substantially improve the children's quality of life, an examination of an alternate visitation schedule would be of no moment. In this same vein, Father suggests that this Court's intent, when setting out the three prongs in the *Gruber* test, requires the prongs to be analyzed in priority order. Noting the *Gruber* court's use of the words "first," "next" and "finally" and its explanation of the burdens placed on both the custodial and non-custodial parents, *see id.* at 439–40, we believe that generally the prongs should be addressed in order. Moreover, we find that the logic espoused by the trial court has merit and is supported by the following language in the *Gruber* opinion:

The court should not insist that the advantages of the move be sacrificed and the opportunity for a better and more comfortable life style for the [custodial parent] and children be forfeited solely to maintain weekly visitation by the [non-custodial parent] where reasonable alternative visitation is available and **where the advantages of the move are substantial.**

*Id.* (quoting *D'Onofrio v. D'Onofrio,* 144 N.J.Super. 200, 365 A.2d 27, 30 (Ch.1976)) (alteration in original and emphasis added). This language emphasizes that where

the advantages of the move are substantial they should then not be defeated solely to maintain weekly visitation. At the same time, this language indicates that a satisfactory schedule cannot overcome a failure to convince the court that the advantages of the move are substantial. Accordingly, we find that the trial court did not abuse its discretion when it did not review Mother's proposed alternative visitation schedule following its determination that the relocation would not substantially improve the quality of the children's lives.

■ ¶ 10 With regard to her second issue, Mother argues that the testimony at the hearing did not support the trial court's findings that her economic and emotional condition would not be substantially improved by the relocation. Rather she asserts that the opposite is true and that the court abused its discretion by not so finding. In its opinion, the trial court responded to Mother's second assertion of error as follows:

> In our Findings of Fact and Order, we acknowledged that there were some potential advantages associated with [the] move to Georgia in that her new husband would provide her financial security and that finishing her education would be easier for her. We did not find, as Mother suggests in her appeal, that her economic condition would be substantially enhanced, nor did we find significant emotional benefits to her. We recited in Finding of Fact No. 3 the essence of her testimony that she believed her life would be improved from a "financial" sense with regard to Allegheny County, and that she could more easily resume her college education. However, the fact remains that she could remain employed and pursue her ongoing education at any one of a number of colleges in and about the greater Pittsburgh/Allegheny County area. Further, Father provides for child support for the children.

> We would note that the emphasis in our Findings of Fact was on the non-economic factors in this case which we believed weighed very heavily in favor of the denial of the relocation petition. The children had a very close relationship with extended family members including parents of Mother who lived directly across the street from the children for years. Further, the paternal grandfather and his wife spent considerable time with the children over the years, especially after the parties separated. We noted that not only Father, but Mother's father and Father's stepmother testified credibly with regard to this substantial involvement in the lives of the children and it was obviously very difficult for Mother's own father to assume a position contrary to the desires of his own daughter.

> Lastly, in response to this alleged error, we had the benefit of a court-appointed child custody evaluator, Dr. John Carosso, who spent many hours in interviewing and testing the parties and the children. His recommendation was against the relocation as he did not believe it to be in the best interest of the children to move to Georgia. He also cited the close family relationships the children enjoyed, as well as their adjustment to school and friends, and the children's own desires as expressed to him that they did not want to relocate to Georgia. We found his testimony to be very credible.

T.C.O. at 2–4.

¶ 11 Mother relies on *Kaneski v. Kaneski*, 413 Pa.Super. 173, 604 A.2d 1075 (1992), a case in which a mother, who was the custodial parent, sought permission to relocate with the children to New York where her husband had secured permanent employment. The court noted that the first prong in *Gruber* could be satisfied

by the showing of substantial economic benefits to the custodial parent and, thus, indirectly to the children. The *Kaneski* court stated that "while the *Gruber* court held that such other benefits must not be ignored or overlooked, it did not require that a move which would significantly improve the quality of life on an economic basis be precluded because other less tangible factors were lacking." *Kaneski*, 604 A.2d at 1078–79.

¶ 12 In another case relied on by Mother, *Boyer v. Schake*, 799 A.2d 124 (Pa.Super.2002), this Court discussed the first *Gruber* factor, stating:

In *Gruber*, rather than narrowing the potential reasons for granting relocation, our Court provided an expansive realm of benefits supporting relocation. *See Gruber*, 583 A.2d at 439 ("In considering the prospective advantages to the move, a court shall not limit itself solely to enhanced economic opportunities for the custodial parent but must also assess other possible benefits of the relocation.") .... Furthermore, we do not conclude that *Maurer* [*v. Maurer*, 758 A.2d 711 (Pa.Super.2000),] precluded the possibility that economic improvements could satisfy the prong by itself, but that in that case the economic benefits did not sufficiently improve the custodial family's life.

*Boyer*, 799 A.2d at 128 (emphasis deleted).

¶ 13 The trial court's decision here recognized that "there may be some potential advantages associated with a move to Georgia for Mother and the children...." FOF 14. However, the court found the move was unlikely to improve the children's quality of life and that the advantages of living in Pittsburgh outweighed the potential advantages of the move. Moreover, the court did not solely rely on economic benefits. Rather it indicated that it placed more emphasis on non-economic benefits, believing in particular that the existence of an extended family in the Pittsburgh area weighed more heavily on the side of denying relocation. Additionally, the trial court relied on the testimony and report provided by the court-appointed child custody evaluator, who recommended that it was in the children's best interests to remain in Pittsburgh.

¶ 14 We have reviewed the entire record and recognize that the trial court had a very difficult decision to make, in that it is evident that both parents love the children and wish to do the best for them. However, we are compelled by our standard of review to affirm the trial court's decision. The trial court's findings are supported by the record evidence and its conclusions are not unreasonable in light of the evidence presented. Moreover, it is apparent that the trial court recognized that its "paramount concern in a child custody case is the best interests of the child...." *Wheeler*, 793 A.2d at 933. Specifically, in its findings and its opinion, the trial court discussed what it denoted as the "potential advantages" of the move. Obviously, the court was not convinced that possible improvements in Mother's life would flow to the children enough so as to overcome the advantages for the children if they remained in Allegheny County. This conclusion is not unreasonable and, therefore, we find that the trial court did not abuse its discretion in denying Mother's request to relocate with the children.

¶ 15 Order affirmed.