## Peace v. Peace

*James W. Manolis,* for plaintiff.
*Phillip L. Clark Jr.,* for defendant.

HODGE, *J.,* January 28, 2010—Before the court for consideration are two matters, the first being the petition for special relief filed by plaintiff/Father, requesting that defendant/Mother be held in contempt of court for violating this court's order prohibiting her from removing the child from the jurisdiction of the court without written approval of either Father or the court, and the second, being a petition objecting to the defendant's relocation to the State of Arizona with the child. Defendant/Mother filed an answer to the rule to show cause issued by the court on the relocation matter, as well as her own counter-petition to relocate.

The parties in this case are the parents of a minor child, K.P., born November 1, 2000.

The most recent order of court relative to the care, custody and control of the minor child is dated July 13, 2006, wherein Mother was granted primary physical custody of the minor child, with Father having partial custody of the minor child on alternate weeks from Sunday through Friday, each week, plus one weekend each month. In addition, paragraph 10 in the order indicated that neither party shall remove the child from the jurisdiction of this court without written consent of the other party or order of court. This order was a stipulated, consensual order of both parties.

There was a subsequent order on March 26, 2007, pertaining mainly to the holiday visitation schedule,

which order reaffirmed the prior orders of this court of July 13, 2006, and November 17, 2005, as to matters not modified by the March 26, 2007 order.

For a party to litigation to be found in civil contempt of court, it is necessary that the moving party prove that there was an existing order, that the offending party knew of the order, and willfully violated the order.

The testimony at the hearing on September 29, 2009, consisted of, among other things, an admission by defendant/Mother that she knew of the provisions of the court order relative to the provision on relocation, that she knowingly failed to notify Father of her move to the State of Arizona with the child, and that she moved to the State of Arizona with the child without notifying Father of her new address.

As a result, the court finds defendant/Mother in civil contempt of court, and will address the appropriate sanction in the order attached to this opinion.

In addition, the court, in civil contempt matters, is obligated to insert a purge condition, similar to this court's interim order of September 30, 2009, wherein the court granted temporary primary physical custody of the minor child, K.P., to plaintiff/Father, pending further order of court.

In that defendant/Mother complied with that order of court by returning the minor child to the custody of Father, this court finds that Mother met the purge condition on not only the order of September 30, 2009, but also which this court would have entered as a final order on the contempt petition.

As to the relocation issue, the appellate courts conclude that the burden of proof in relocation proceedings is on the party seeking to relocate. *Dranko v. Dranko,* 824 A.2d 1215 (Pa. Super. 2003).

Prior to September 2008, the evidence in this case is relatively uncontradicted from both sides. The parties were married and separated several months prior to the birth of the child on November 1, 2000. Thereafter, the first custody order was entered by the Honorable J. Craig Cox, of this court, on May 8, 2001, granting the parents shared legal custody of the minor child, and Mother primary physical custody, as the parties mutually agreed. Thereafter, Father was substantially involved in the minor child's life, leading up to the order of July 13, 2006, wherein Father was granted partial custody of the minor child for alternate weeks from Sunday through Friday, plus one weekend per month.

In September of 2008, a dispute arose at a custody exchange, with each parent having a different version of what happened. Mother's version was that she was trying to get the child to tell her father why the child did not want to stay the week with Father, apparently for some issue pertaining to Father's current wife and her attempts to discipline the child. Father indicated that Mother was so far out of control, that for the sake of calming the situation and preventing a further escalation, he told the child to go back home with Mother until such time as Mother calmed down. Thereafter, Father did not exercise custody pursuant to the order of July 13, 2006, however, he testified that he saw the child several times each week while the child was staying with his mother, who would

baby-sit the child for Mother after school until Mother's work schedule permitted her to pick up the child.

Mother has been employed at McKesson Pharmaceuticals in New Castle, Pennsylvania, with her job title being that of lead warehouse worker for the past several years. Mother works shifts in New Castle, either 7 to 3:30, or 3 to 11:30, with no weekend work. Mother became aware of a job opportunity with McKesson in Arizona, and in July 2009, traveled to Arizona, without the child, to investigate the living and work situation in the State of Arizona. Mother was positively impressed by the living circumstances and the work circumstances in Arizona, and as a result, arranged a transfer from New Castle to the State of Arizona, and continued employment with McKesson Pharmaceuticals.

It is undisputed that Mother did not inform Father in any manner that she and the child were moving to the State of Arizona. Father's testimony was that he observed a moving van at Mother's residence, but concluded that she was merely changing residences within Lawrence County, as she had done numerous times since the child was born. Only after Father heard through a mutual acquaintance that Mother had gone to Arizona, did he realize that Mother and child were, in fact, gone from New Castle.

Father then filed his petition for special relief and contempt on September 9, 2009, and this court held a hearing on September 29, 2009, leading to the court's interim order of September 30, 2009, ordering Mother to return the child to New Castle pending further order of court.

The Superior Court of Pennsylvania in the case of *Gruber v. Gruber,* 400 Pa. Super. 174, 583 A.2d 434 (1990), set forth the standards and factors which the court must consider in every relocation dispute, those factors being as follows:

(1) The potential advantages of the proposed move, economic or otherwise, and the likelihood the move would improve substantially the quality of life for the custodial parent and the children and is not the result of momentary whim on the part of the custodial parent;

(2) The integrity of the motive of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it; and

(3) The availability of realistic, substitute arrangements which would adequately foster an ongoing relationship between the child and the non-custodial parent.

Mother's testimony relative to the *Gruber* factors were substantially as follows:

Mother believed that the job opportunities with McKesson Pharmaceutical, were superior in Arizona, and that she would have the career opportunity for supervisory positions in Arizona, in that all similar positions were filled at the New Castle McKesson location.

Mother had visited Arizona prior to the move, liked the area and the environment, and "took a chance on relocation." In addition, Mother testified she investigated the schools in Arizona, which started in late August 2009, and that the outside activities were appropriate for the child and that the child was doing well in school.

Mother's living arrangement in Arizona was similar to the Union Township living arrangement, with Mother and her boyfriend renting an apartment in an apartment complex where the child had her own bedroom, and there is a swimming pool and play area in the apartment complex that the child could use.

Mother acknowledges she has no family contacts in the State of Arizona, while she did have a family in New Castle.

Mother testified that she preferred the steady shift in Arizona of 6:30 p.m. to 3 a.m., as opposed to working swing shifts in New Castle. The childcare arranged by Mother for the child when she was working, was that the child would stay with a friend of the family, Loretta Benning, or her boyfriend, Hayden Russell, if he was not working.

The child had met Mr. Russell when he had come to New Castle on weekends prior to the move to Arizona, but the defendant and Mr. Russell had not lived together until the move to Arizona.

After September of 2008, Mother testified that to her knowledge, Father's last contact with the child had been at Christmas of 2008, for several hours, when he took her shopping to spend her Christmas gift cards, and several days later. Subsequent to September 2008, Mother testified that Father made no calls to the child, sent no cards, gifts, or letters inquiring about her well-being. In addition, Mother testified that since the move to Arizona, Father had made no attempts to call the child. Mother did acknowledge that she knew that Father had

been seeing the child while the child was at his mother's.

On cross-examination, Mother acknowledged the continuing difficulties with Father relative to the custody of the child, however, acknowledged that Father had weekly custody of the minor child since September of 2005, until the September 2008 incident. On cross, Mother acknowledged that she did not encourage visits with Father, as she thought there must have been a reason why the child did not want to go to Father's.

Mother acknowledged that she did not tell Father about the job opportunity in Arizona in July 2009, that she made the decision to move to Arizona after returning from the visit to Arizona in July 2009, and did not tell Father. Mother admitted that she is well aware of the court order prohibiting the relocation without written consent of Father or order of court, and that she ignored the order and took responsibility for her own child, believing it to be in the child's best interest as a mother.

Mother's testimony about the job position in the State of Arizona, with McKesson Pharmaceuticals, is that essentially, it was very similar to the position in New Castle, with her job title in Arizona being a step below that of her job title in New Castle, however, that she did still manage a shift of 35 persons.

Mother did not present any testimony relative to any proposed visitation of the child with Father, should the court grant her primary physical custody and permit the relocation to the State of Arizona.

Father's testimony was that Mother was very difficult to deal with, and that after the incident in the driveway in September of 2008, he had told Mother to take the child with her until they figured something out, as Mother was screaming at the child to tell Father why she did not want to come over to his home. Father's perception of the child was that she was like any other child, rejected discipline, and that each week when she would be coming over that she would have an attitude early in the week, which attitude improved the longer she was staying with Father and stepmother. In addition, Father testified that he was intending to discuss the school situation with Mother and attempting to get back on better terms with the child as far as regular partial custody, before the start of the 2009 fall school year, in that Mother and the minor child used his resident address in Union Township, Lawrence County, Pennsylvania, as the address for the child for school attendance purposes. Mother lived in the City of New Castle, and Mother did not want the child to attend New Castle School District.

The court's conclusion in this case is that the parents did not have completely equal, shared physical custody of the minor child pursuant to the order of July 13, 2006, in that Mother, with the addition of three weekends per month, as opposed to one weekend per month of Father, would have a slightly greater percentage of custody time than Father. Counsel for Father referred the court to the case of *Thomas v. Thomas,* 739 A.2d 206 (Pa. Super. 1999), in which the Superior Court held that the *Gruber* factors apply with equal force to relocation actions by parents who share physical custody. Thus, the court will

analyze the *Gruber* factor in each party's testimony to arrive at its determination in this matter.

As to the first factor, the potential advantages of the proposed move, economic or otherwise, Mother's testimony was that her economic conditions would be substantially the same in Arizona as in New Castle. Her wages were substantially the same in both jobs, her testimony being that there were more career opportunities in Arizona being somewhat speculative, in that the position that she was placed upon her transfer to Arizona was substantially the same as that in New Castle. Mother's testimony was that she moved to Arizona and was living with her boyfriend, Hayden Russell, who also secured employment in Arizona. However, Mother testified she is not engaged to Mr. Russell and had no present intentions to marry him. As to the schools, Mother testified that the school in Arizona was appropriate, but there was no testimony to the point that this court can conclude that the schools in Arizona were in any manner superior to the child's schooling at the Union Township School District. Included in the first *Gruber* factor is the issue of whether or not the move is a result of a "momentary whim" on the part of the custodial parent. This court's analysis of Mother's testimony is that the relocation was the result of a momentary whim, in that she had never previously been to Arizona, she had no substantial improvement in her job opportunities in Arizona, she had no family in Arizona, and that the move was done without any type of notification to the father.

Based upon the same reasons, the court questions the integrity and motive of Mother in seeking the move, in

that she, by her own testimony, acknowledged that she made the move without any notice to Father. The non-custodial parent's, Father's, motive for seeking to prevent the move was appropriate, in that while he was not seeing the child pursuant to the then existing custody order, that he was remaining in contact with her very frequently when the child was at his mother's home.

As to the third factor, the availability of realistic, substitute arrangements which would adequately foster an ongoing relationship between the child and the non-custodial parent, Mother presented no testimony whatsoever as to how she would propose that the court resolve this situation in her behalf. In addition, in cross-examination, Mother essentially admitted that even in New Castle, she did nothing to foster an ongoing relationship between the child and Father.

As a result, the court concludes that Mother has failed to meet her burden of proof relative to the *Gruber* factors, necessary and appropriate for this court to rule in her favor on the counter-petition for relocation.

In addition, based upon the court's conclusion relative to Mother's failures to meet her burden of proof on the *Gruber* factors, this court concludes that the best interest of the minor child, based on the same factual analysis, is that the child shall remain in the primary physical custody of Father, who acknowledged that he felt it would be appropriate for the child to visit with her mother in Arizona, for a good part of the summer. In addition, Father acknowledged that he permitted and encouraged the child to speak with her mother almost daily via telephone.

Accordingly, the court will enter the following order:

## ORDER

And now, January 28, 2010, in accordance with the attached opinion, the court enters the following order:

(1) The defendant/Mother, Ada Major, is found to be in contempt of this court's order of July 13, 2006, in that Mother moved the minor child to the State of Arizona without obtaining prior order of court or written consent of Father.

(2) The court finds that Mother has purged herself of the contempt by returning the child to New Castle, Pennsylvania, pursuant to this court's order of September 30, 2009.

(3) As a sanction for the contempt, the court assesses the mother attorney's fees in the sum of $750, payable to Attorney James Manolis, by April 30, 2010.

(4) As to the petition for special relief filed by Father, objecting to the defendant's relocation to Arizona with the child, the court grants the petition, and the relocation of the child to the State of Arizona is hereby denied.

(5) Primary physical custody of the minor child, K.P., shall be with plaintiff/Father, subject to defendant's/Mother's partial custody rights as herein set forth.

(6) The defendant/Mother shall have partial custody of the minor child as follows:

(a) For summer vacation commencing on June 15 of each year, through August 15 of each year, in the State

of Arizona, with the parents to be responsible for equally sharing the cost of transportation. Mother shall be responsible for arranging the transportation for the minor child, and shall notify Father in advance, no later than May 31 of each year, of the cost of the airline transportation to and from the State of Arizona. Father shall be responsible for taking the child to the Pittsburgh Airport, for the flight to Arizona, and shall be responsible for picking the child up at the Pittsburgh Airport upon her return. In the event the parties arrange for transportation other than airline transportation, the cost and process shall be similar.

(b) Mother shall have partial custody of the minor child commencing in calendar year 2010 and on even years thereafter, commencing one day after the child's last day of school for the school schedule prior to the Christmas vacation period, up until January 1 of each year; in odd numbered years, Mother's partial holiday visitation shall commence on December 26 of each odd numbered year, through January 1 of the following year.

(c) The parties may arrange for other suitable holiday vacation time between Mother and the minor child, as they mutually agree.

(d) The parties shall have shared legal custody of the minor child, as is set forth in the order of July 13, 2006.

(7) The prothonotary shall properly serve notice of this order by regular mail or personal service upon counsel of record and any party not represented by counsel at their last known address as contained in the court file.