## Lohr v. Myers.

*Phillip L. Clark Jr.*, for plaintiff.
*William M. Panella*, for defendant.

MOTTO, *J.*, September 10, 2012—Before the court for disposition is the petition of Jason Alexander Lohr (hereinafter "father") for modification of the current custody order to transfer primary physical custody of the child, Alexander Jason Lohr, (hereinafter "A.J.L."), born October 6, 2005, from Trinitie Myers, now Ronka, (hereinafter "mother") who presently enjoys primary physical custody.

Mother and father met in 2005. A.J.L. was born on May 1, 2006. At the time of birth, mother and father had separated but Mother was living in an apartment in a residential dwelling owned by father's parents. Mother moved out of that apartment when A.J.L. was approximately five months old and went to live with her father. From birth until the commencement of this action, A.J.L. resided primarily with mother with father having sporadic contact with him.

On January 6, 2007, father filed his initial complaint for custody and a petition for special relief seeking to enjoin mother from relocating with the child from Lawrence County to the state of North Carolina. The result of the initial proceedings was an order of court

entered on February 14, 2007, by agreement of the parties, awarding primary physical custody of A.J.L. to mother, with mother and father to have shared legal custody, and with mother being permitted to relocate with the child to the state of North Carolina. The order further provided for father to have twenty days of partial custody in each two-month period. The parties were to share the providing of transportation for the exercise of partial custody. Subsequently, the parties agreed between themselves to share the time that each would have the child so that each party would have the child for thirty consecutive days and alternate every thirty-day period.

The sharing of custody of the child on the thirty-day rotation continued until July of 2011 when mother enrolled A.J.L. in school in the city of her residence, Havelock, North Carolina. In order to allow for the child to have more frequent contact with father, mother opted to enroll the child in an optional school program whereby the child would attend school all year round, with the child to be in school for nine weeks, then on vacation a period of three weeks, with nine week sessions continuing throughout the year, each nine-week session followed by a vacation of three weeks, except in the summer, when there would be a break of five weeks before the commencement of the next school year. With this school arrangement, father has received the child during the three weeks that the child is out of school and in the summer of 2012, had received the child for four weeks of the five-week summer vacation period.

In seeking primary physical custody, father notes that he and virtually all of his family has attended the Laurel school district in Lawrence County where A.J.L. would

be enrolled if he obtained primary physical custody and the majority of the child's family is located in Lawrence County. Father further notes that since he is on social security disability he has ample time to spend with the child.

Father resides in a residential structure owned by his parents that contains three apartments. He lives in the upstairs apartment with his ex-wife, Tracy Lohr, and daughter Madison, age 15 and step-daughter Lilly, age 7. Father has lived in this structure since he was five years old. Father's mother and father and father's daughter, Hope, age 20, live in one of the downstairs apartments together with Hope's boyfriend and their one-year-old child. In another downstairs apartment, father's other ex-wife, Erin Cartwright, resides, that ex-wife being the mother of Hope and Abby Lohr, both children of father and Erin Cartwright. Father had attended the Laurel school district, did not graduate, but obtained a G.E.D. Father has been on social security disability since 2008 because of having A.D.H.D. and neck injury. Father is able to make extra money on occasion as a disc jockey.

Most of the family of both father and mother reside in Lawrence County. Three of A.J.L.'s grandparents reside in Lawrence County, a great-grandparent and various aunts and uncles as well as the half-siblings and half-step-sister mentioned above.

Father's ex-wife, Tracy, with whom he resides, is a registered nurse and enjoys a good relationship with A.J.L. as well as a good relationship with all of father's family. Tracy generally works the night shift, but does whatever is necessary to assist with the care of A.J.L. when he is in

the physical custody of father.

Father maintains contact with A.J.L. through the use of Skype and telephone calls when A.J.L. is in the custody of mother. Father has received treatment for psychiatric issues, which is treated with medication and sees a counselor once a week.

Father's home is adequate for the care of A.J.L. the apartments are structured so that A.J.L. can move freely between the various apartments and will spend a substantial amount of time with his paternal grandparents when he is in the physical custody of father. Although photographs have been presented showing used parts stored in the back of the residence that are used in the appliance repair business of the paternal grandfather, there is nothing to indicate that these parts pose a danger to the children, who otherwise have a substantial area in which to play. Father's residential facility for the care of A.J.L. is adequate.

Mother resides in Havelock, North Carolina with her husband, Sean Ronka, and their children. The children born to mother and Mr. Ronka, A.J.L.'S half-siblings, are aged three and an infant. Mother and father were never married. For the first four months of the pregnancy, mother and father resided together. Father then asked mother to move out because he did not want to get married. Later mother moved back into the father's residence and father moved out. After the birth of A.J.L. mother remained at the residence and did not see father again until A.J.L. was about two months old. After that time, father would see A.J.L. on an irregular basis until mother moved to North Carolina in 2007. As noted, mother moved to North Carolina with the consent of father and pursuant to a consent order of court

that allowed for father to have physical custody twenty days in a sixty-day period, which order was later modified by oral agreement to provide for the parties to share time with A.J.L. on a thirty-day rotation, which schedule continued until A.J.L. started school.

Mother intentionally enrolled A.J.L. in a school having the year-round schedule in order to maximize the amount of physical custody father could have with A.J.L. The optional schedule which mother obtained for A.J.L. is nine weeks of school followed by three weeks of vacation, continuing on that rotation starting in July and ending in June, with a summer vacation period of five or six weeks. Since that has started, A.J.L. has spent his vacation period when not in school with father. Most of the five-week summer vacation period was spent by A.J.L. with father. This year-round schedule can be continued through the completion of high school.

A.J.L. gets along well with his half-siblings and spends much of his time playing with his three-year-old sister, Anni, and interacts with his half-brother, Wesley, who as an infant is in the crawling stage.

A.J.L. has a pediatrician and a dentist in North Carolina and is covered by health insurance issued through mother's husband, Sean Ronka, who is presently in the service. A.J.L. will call Mr. Ronka "Daddy Sean". Mother is careful to make A.J.L. understand that Mr. Ronka is not his father.

Although most of mother's family lives in Lawrence County, mother does have a brother-in-law, sister-in-law, and a niece and nephew residing nearby. Her niece and nephew are respectively nine and 13 years of age

and do visit, at least every other weekend. The maternal grandmother lives in Wilmington, North Carolina, about two hours from where mother resides. Mother visits frequently with the maternal grandmother. A.J.L. will stay with the maternal grandmother and her husband on a boat in a marina. Mother's brother also lives in North Carolina, approximately two hours away from where mother resides. That brother has three children; ages nine, three and approximately two years old. A.J.L. has many friends at school in North Carolina and has a friend in the neighborhood with whom he will play on occasion. As an outside activity, A.J.L. is interested in Taekwondo. A.J.L. is doing well in school. In North Carolina, A.J.L. attends church with mother at the Cornerstone Assembly of God. In Lawrence County, A.J.L. attends church with father at the Victory Church.

Father has complained of not being consulted relative to important matters in the life of A.J.L., as required by the shared legal custody arrangements of the outstanding court order. A.J.L. was made to see a counselor by mother, but father was not timely advised of that fact. Father has had some difficulty receiving school papers related to the child's school work and progress.

Brian E. Dick, a psychologist, performed a full custody evaluation and concluded that the present status quo, with mother having primary physical custody and father having partial physical custody on the vacation time period when school is not in session, given the year-round school schedule, should be maintained. Mr. Dick concludes that to change custody to father would deprive mother of spending a sufficient amount of time with A.J.L., while the current arrangement whereby in North Carolina A.J.L. is

able to attend school all year round, enables both parents to have regular and frequent contact with the child. Although father has suggested cyber school, Mr. Dick concludes that is not a viable option, as cyber school does not provide the same opportunities to have interaction with co-students in the same manner that attending a traditional school setting provides.

The paramount concern in a child custody case is the best interests of the child, based on consideration of all factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being; this determination is to be made on a case-by-case basis. *Dranko v. Dranko*, 824 A.2d 1215 (Pa.Super. 2003); *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa.Super. 2004). Pursuant to 23 Pa.C.S.A. §5328(a), in ordering any form of custody, a court shall determine the best interests of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the factors hereinafter discussed, and are thus required to be considered by statute.

### 1. Which party is more likely to encourage and permit frequent and continuing contact between the child and the other party?

The court finds that both parties allow and encourage contact between the other party and the minor child. Father communicates with the child by utilization of Skype and telephone. Mother does nothing to prevent the contact between father and the child. Mother has raised no issues regarding her ability to contact the child while the child is in the physical custody of father. Each party views the other as a good parent, and each party recognizes the

significant impact the other has in A.J.L.'s life. In fact, mother specifically enrolled the child in an all-year school program which allows for a three-week break after each nine-week session in order to allow more frequent contact between the child and father given the distance between father who resides in Lawrence County and mother who resides in North Carolina.

2. The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

No evidence of any abuse by either parent toward the child has been presented, nor is there any evidence of any abuse committed by any party or any member of the parties' households towards any other person. The court finds that there is no continued risk of harm to the child or any party and that both parties have the ability to provide adequate physical safeguards and supervision of the child.

Evidence was presented that mother's current husband on one occasion administered corporal punishment to the child. Mr. Ronka explained at the time he spanked the child, he believed that the child was wearing a diaper. No other incident has been shown to have occurred and the court specifically finds that Mr. Ronka has not in any manner been abusive toward the child.

3. The parental duties performed by each party on behalf of the child.

The court finds that each parent possesses the ability to care for the minor child. The mother was the primary

custodian of the child at birth and continued to be the primary physical custodian until the parties agreed to an equal split of the time with the child at some point after mother moved to North Carolina, whereby the parties exchanged the child every thirty days. That arrangement continued until the child was enrolled in school, which required the child to be in North Carolina with the mother as the primary physical custodian for each nine-week period of school, with school continuing throughout the year, beginning in July and ending sometime in June. Since the original custody order was entered in this case, all custody orders have identified mother as the primary physical custodian.

4. The need for stability and continuity in the child's education, family life and community life.

A child needs a significant degree of stability and continuity in his life. Mother currently enjoys primary physical custody of A.J.L. Considering the distance between the residence of each party, with father living in Lawrence County and mother living in the state of North Carolina, father enjoys a significant amount of partial custody whereby the father has the child during the vacation period that occurs at the end of each nine-week session of school. This arrangement is able to occur because of the mother's willingness to enroll the child in a non-traditional school schedule that is available in North Carolina, which allows for an all year schedule. If granted, father's request for a change in primary physical custody to him would cause a total disruption in A.J.L.'s current routine and a change in enrollment to a different school district. Father has not shown any need for such a change. Father cites as one reason for requesting a change in desire to have the

child attend the Laurel school district where he and all of his family had attended school. The court does not view father's desire to have the child attend the Laurel school district to be a reason for change. There is no evidence of any unique capabilities for education that is available in the Laurel school district that is necessary for the child's education. Although father expresses a desire for the child to attend the Laurel school district, he also proposes as an alternative that the child enroll in cyber school and have shared physical custody of the child every thirty days as had occurred in the past. If such alternative were allowed, the child would have little or no contact with the Laurel school district itself, thus calling into question father's own stated motivation of wanting the child to attend the Laurel school district. The child is doing well in his current school schedule. There is no reason from an educational standpoint to direct a change in the manner in which the child is educated.

### 5. The availability of extended family.

Both mother and father are originally from Lawrence County. Most of the family of both mother and father reside in Lawrence County. Father resides in the same residential structure as the paternal grandparents. A set of great-grandparents also reside in Lawrence County. The maternal grandmother lives in North Carolina as well as mother's brother. The child has in Lawrence County a half-sister and a step-sister as well as other older half-siblings. In North Carolina the child has a younger half-sister and half-brother who are the result of mother's marriage to Sean Ronka, all of whom make up the household of mother.

The court finds that given the frequency with which the child returns to Lawrence County given the year-round school schedule, the child has ample opportunity to interact with the extended family located in Lawrence County.

### 6. The child's sibling relationships.

A.J.L. is the only child between the parties. Father has two older children to a previous spouse. Father has adopted one of the children of the other ex-spouse with whom he currently resides and is a part of his household. There is another daughter of his current ex-wife's with whom he resides that is also a part of that household. Mother has two children Ani, age 3 and Wesley, an infant, who are the product of her current marriage to Mr. Ronka. A.J.L. has a good relationship with all of the children and/or step-children of both parties, especially mother's children since they are younger and closer in age.

### 7. The well-reasoned preference of the child, based on the child's maturity and judgment.

A.J.L. is six years of age and is too young to provide the court with a preference that should be considered as a factor in this case. However, the court did have the opportunity to question A.J.L. and there is nothing in the testimony given by the child that would indicate to the court a need to change the current custody arrangement. The child enjoys spending time with both parents and is well adjusted to his current educational program in which he is enrolled.

### 8. The attempts of a parent to turn the child against the other parent.

There has been no evidence presented to the court to warrant the conclusion that this factor is an issue.

### 9. Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child, adequate for the child's emotional needs?

The court finds that each parent has a real love for A.J.L. and that both parties care for his emotional needs. Both parents maintain a stable residence. In father's residence, the child has the ability to spent time both with his father and his paternal grandparents, who live in the same structure but in a separate apartment. The child goes freely between the apartment of his father and the apartment of his grandparents. Mother has a traditional single family home that is adequate and the family unit includes mother, the child's stepfather, Mr. Ronka, and the child's two younger half-siblings, all of whom form a traditional and stable family unit.

### 10. Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child?

Both parties are good parents who have and will attend to the daily physical, emotional, developmental, educational and special needs of the child. Both parties spend an appropriate amount of time with the child when each party has physical custody. Both parties maintain households that include the child as part of the household. Both parties are concerned for the child's education and are able to assist the child with homework and school activities.

### 11. The proximity of the residences of the parties.

Father lives in Lawrence County, Pennsylvania and mother lives in Haverton, North Carolina. This distance creates difficulty for the parent who does not have the primary physical custody to have regular on-going physical contact with the child. However, mother, through her own initiative, has lessened this difficulty by enrolling the child in a school that offers an all-year school schedule that allows for a break of three weeks after each nine-week session with a longer break of five or six weeks in between school years in the summer. Father is fortunate to have the ability to have the child for a period of physical custody at the end of every nine-week school session.

12. Each party's availability to care for the child or ability to make appropriate child care arrangements.

The court is satisfied that both parents are capable of caring for A.J.L. and making necessary child care arrangements. Father is on social security disability and given the nature of the residential structure in which he resides, where his parents have an apartment within the same structure that is accessible to the child, child care is not an issue. There is no evidence that mother has any child care issues nor is there any evidence that mother is in need of obtaining any child care while she enjoys the primary physical custody. The record reflects that mother is available to the child at all times when the child is not in school.

13. The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.

The parties are capable of adhering to an appropriate level of communication and cooperation from matters

relating to the care of A.J.L. Although some evidence was presented of the child being brought to counseling by the mother without the father being informed of it at the time it occurred, this was an isolated incident. Father has also complained of not receiving communication from the school; however, the court finds that the school may not have provided father with all the information he requested in the manner in which he requested it, but to the extent that the school fell short in communicating with father or responding to his requests, such was not the fault of mother. When the child comes to Lawrence County, mother will prepare a package of papers for the child to bring with him so the father can review them. The court finds that the parties understand that it is important that they communicate in an appropriate manner and the court further finds that mother and father can and will likely continue to interact appropriately.

14. History of drug or alcohol abuse of a party or members of a party's household.

No evidence was presented that would cause this court to conclude that drug and/or alcohol abuse is a concern relative to either parent.

15. The mental and physical condition of a party or member of a party's household.

Father has had some mental health issues but the court is satisfied that the father has those issues under control, that he is mentally and physically stable and that the father's mental health issues do not impact negatively upon the child. There is no evidence of any present mental or physical condition of the mother that would affect her ability to care for the child.

Taking all of the above factors into consideration, the court finds that the child's best interests are served with the mother continuing to be the primary physical custodian as long as the child continues to be enrolled in the all-year school program. To change custody to the father would lessen the child's time with the mother. The all-year program is available in North Carolina; it is not available in Lawrence County, Pennsylvania. Therefore, the current situation where the child can spend substantial time with the father at the end of every nine-week period of school is a circumstance that should be taken advantage of, given the distance between the parties. This schedule allows the child to have regular substantial contact with both mother and father and with what family is present in each location. If the court were to change primary physical custody, the mother, who has for most of the child's life, enjoyed primary physical custody and has never had less than shared physical custody, would be left with having the child for a period of summer vacation and holiday breaks from school. This conclusion is supported by the opinion of the custody evaluator, who made the recommendation that the status quo of the current custody arrangement be maintained as it ensures ongoing conduct with both parents even though the parties live a substantial distance from each other. The custody evaluator also gave the opinion that it would be detrimental to remove the child completely from his existing environment with his mother and have him enroll in a Pennsylvania school. This would be a radical change from the arrangement which the child has known since at least 2007 where the child has had regular contact with both parents. Although father has suggested cyber school as an alternative with the child to have equal time with both parents and be

schooled through the use of a computer, the court finds that insufficient evidence was presented to suggest cyber school as a viable alternative and was not recommended by the custody evaluator. If cyber school were utilized, the child would not be attending school in a traditional classroom setting and it is unknown how the child would adapt to that type of educational experience. The current educational experience works well and the child is thriving in it; therefore, to make a radical change such as cyber school would have an unknown result and is unnecessary given the frequent contact that the child has with both parents under the existing arrangement.

For the foregoing reasons, the court will enter an appropriate order that will provide a custody order that essentially maintains the status quo of mother having the primary physical custody and father having the substantial portion of the vacation time when school is not in session, with the parties to share transportation.

## ORDER OF COURT

And now, September 18, 2012, following a custody hearing, and in accordance with the accompanying opinion of even date herewith, it is ordered and decreed as follows:

1. The mother, Trinitie Myers, now Ronka, is awarded primary physical custody of the minor child, Alexander Jason Lohr, born May 1, 2006, subject to the partial custody rights of the father as outlined below. The custodial parent has the obligation to foster and encourage a healthy relationship between the minor child and the non-custodial party.

2. The parties shall have shared legal custody of the minor child. Legal custody is the legal right to make major decisions affecting the best interests of the child. Major parental decisions concerning the child include, but are not limited to, health, medical, dental, orthodontic, mental health treatment, education, religious training and upbringing. Except in the case of medical emergencies, the custodial parent shall consult with the non-custodial parent. Shared legal custody does not give one parent final authority in the event of a dispute. The parties shall execute any and all documents or releases necessary to effectuate legal custody, including but not restricted to, authorizations and/or releases for school reports, medical reports, insurance documents and documents required by local, state or federal authorities. Both parties shall have the right to obtain and review all information contained in records of the child, including medical, dental, psychiatric, educational, and religious records and documents, in accordance with 23 Pa.C.S.A. §5309. Neither parent shall enroll the child into curricular or extra-curricular activities without prior notice to and consent of the other parent. Each parent shall keep the other informed of the child's activities, school events, and medical appointments. Each parent shall keep the other notified of all important issues regarding the minor child. This order shall serve as a release to any medical, educational, or religious provider to release information to both parents pursuant to Title 23 Pa.C.S.A. §5336, all parties to have access to the child's records and information.

3. The father, Jason Alexander Lohr, is awarded partial custody rights with the minor child during every school break for a minimum of three (3) weeks each break,

including the lengthier summer break that occurs between school years. However, if summer break is more than 35 days, father shall have the child for one more day for each two days that the break exceeds 35 days. In computing father's period of summer vacation, travel days shall not be included as part of father's period of physical custody.

4. In even-numbered years, the father shall have custody of the minor child on Thanksgiving and the mother shall have custody of the minor child on Christmas. Father shall have custody of the minor child on Easter and mother shall have custody of the minor child on the 4th of July. In odd-numbered years, the mother shall have custody of the minor child on Thanksgiving and father shall have custody of the minor child on Christmas. Mother shall have custody of minor child on Easter and father shall have custody of the minor child on the 4th of July.

5. Regarding transportation, unless otherwise agreed, the child shall be exchanged at the Marine Corps Museum at Quantico Military Base in the Commonwealth of Virginia.

6. Transportation may be provided by a family member or someone well-known to the child. All parties and anyone else involved with transportation shall comply with the laws and regulations of the Commonwealth of Pennsylvania, including those regarding child safety restraint apparatus in any vehicle used to transport the child.

7. The parties are directed to fully cooperate with each other in fulfilling the requirements of this order and all other orders in connection with this matter and to comply with all provisions contained in the order(s).

All communications regarding custody issues shall take place directly between parents, never using their child as an intermediary.

8. This order supersedes all prior custody provisions in the within captioned case. All prior custody orders are null and void.

9. The parties may modify the terms of the above custody and partial custody as they both agree. One parent shall not change these provisions without the consent of the other.

10. While in the presence of the child, neither party shall make any remarks or do anything which can be in any way construed as derogatory or uncomplimentary to the other, and it shall be the duty of each parent to uphold the other party as one whom the child should respect and love. To the extent possible, each party shall not permit any other person from making derogatory comments in the presence of the child. Each parental figure shall refer to the other by the appropriate role names such mom, dad, your grandmother, etc.

11. Lawrence County retains jurisdiction of this custody case. Neither party shall remove the child from the jurisdiction of this court with the intent of changing the physical residence of the child without the written consent of the other parent or approval of the court. Neither party shall permanently relocate if the relocation would significantly impair the other party's ability to exercise his or her custodial rights without a minimum notice of ninety (90) days prior to the other parent. The ninety-day notice is designed to afford the parent the opportunity to negotiate the custody arrangements or to have the matter

scheduled before the court. The party proposing the relocation must notify all parties in accordance with title 23 Pa.C.S.A. §5337 of the custody act. No relocation shall occur unless every person with custodial rights consent, or the court approves the proposed relocation in accordance with §5337 procedures.

12. The parties shall abide by the terms of the appendix attached hereto, incorporated herein, and made part hereof.

13. The prothonotary shall be responsible for properly serving a copy of this order upon all counsel of record.