J-A22021-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| J.S.F. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| K.G.F., N/K/A K.G.S. | : | |
| | : | |
| Appellant | : | No. 431 MDA 2016 |

Appeal from the Order Entered March 3, 2016
In the Court of Common Pleas of Lancaster County
Civil Division at No(s):  CI-09-09368

BEFORE:  GANTMAN, P.J., PANELLA, J., and JENKINS, J.

MEMORANDUM BY PANELLA, J.                    **FILED NOVEMBER 18, 2016**

K.G.F. n/k/a K.G.S. ("Mother") appeals from the March 3, 2016 order in the Court of Common Pleas of Lancaster County that modified the existing custody order with respect to her son, P.F., born in May 2009 ("Child"). We affirm.[1]

This appeal arises from a petition for modification and contempt in custody filed by Mother against J.S.F. ("Father") on April 15, 2015, wherein she requested primary physical custody and that Child be enrolled in the Cocalico School District for the 2015/2016 school year, among other things. Father filed an answer and new matter, wherein he requested primary

_____

[1] The Honorable Jeffrey J. Reich issued the subject order. The record reveals that he has presided over the underlying custody matter since it commenced in 2009.

physical custody and for Child to continue attending elementary school in the School District of Lancaster.

A hearing occurred on January 8, 2016, January 14, 2016, and February 17, 2016. Mother testified on her own behalf, and she presented the testimony of A.M.W., her boyfriend; R.E.H., Jr., Child's maternal great uncle; P.B.S., Child's maternal grandfather; and Kate Egerter, a caseworker from Lancaster County Children and Youth Services. In addition, Mother presented the testimony of A.R.E., her then twelve-year-old son, who is Child's half-brother. Father testified on his own behalf, and he presented the testimony *via* telephone of M.D., his colleague, and A.C., his neighbor whose son is a friend of Child.

In its opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), the trial court set forth factual findings, which the testimonial evidence supports. As such, we adopt them herein. **See** Trial Court Opinion, 4/15/16, at 3-12.

Importantly, the trial court found that the parties lived a driving distance of 35 to 45 minutes apart and had been operating "under a court order with a shared physical custody arrangement . . . whereby the Child was exchanged several times each week on a rotating bi-weekly schedule." Trial Court Opinion, 4/15/16, at 3, ¶ 5; **see also** Trial Court Opinion, 3/3/16, at 9. Further, Mother and Father are employed as educators in the School District of Lancaster. **See id**. at 3, ¶¶ 2-3. At the time of the subject

proceedings, Child was attending first grade in the School District of Lancaster. *See id*. at 5, ¶¶ 19-20. Specifically, Child was attending the Buchanan Elementary School, which was a driving distance of five minutes from Father's home and thirty minutes from Mother's home. *See id*. at 7, ¶¶ 28-29.

By order entered on March 7, 2016, the trial court granted Father primary physical custody during the school year, and Mother partial physical custody on alternating weekends, from Friday at 5:00 p.m. until Sunday at 5:00 p.m., and every Wednesday from after school until the beginning of school on Thursday. The court directed that Child continue to attend the Buchanan Elementary School. The court granted the parties shared physical custody on an alternating weekly basis during the summer. Further, the court granted the parties shared legal custody.

Mother timely filed a notice of appeal and a concise statement pursuant to Rule 1925(a)(2)(i) and (b). On April 15, 2016, the trial court filed its opinion pursuant to Rule 1925(a).

On appeal, Mother presents the following issues for our review:

I. Did the [t]rial [c]ourt err as a matter of law by its failure to adhere to Pa.R.C.P. 1915.4(c) in that the trial shall be commenced within 90 days of the date the scheduling order is entered?

II. Did the [t]rial [c]ourt err and/or abuse its discretion in denying Mother's Emergency Petition to Bypass the custody modification conference, when it knew that there was limited availability to hold a hearing on the school district issue prior to the beginning of the 2015-2016 school year?

III. Did the [t]rial [c]ourt err and/or abuse its discretion in deciding the school district issue in a manner not consistent with its prior order?

IV. Did the [t]rial [c]ourt err and/or abuse its discretion in denying Mother's Emergency Petition to allow the telephone testimony of the mother of Father's youngest child, which would have questioned the credibility of Father's testimony, and which would have substantiated claims made by Mother?

V. Did the [t]rial [c]ourt err and/or abuse its discretion in refusing to follow its prior order allowing for the [i]n camera examination of Father's employment record, when said order was entered as a result of suspension allegations which Father denied?

VI. Did the [t]rial [c]ourt err and/or abuse its discretion in misapplying the facts to the statutory factors under 23 Pa.C.S. [§] 5328, resulting in numerous conclusions that are unreasonable under the circumstances as shown by the record?

VII. Did the [t]rial [c]ourt err and/or abuse its discretion in that it unreasonably did not give any consideration to Father's history of not testifying truthfully at a prior proceeding?

VIII. Did the [t]rial [c]ourt err and/or abuse its discretion in that it unreasonably did not give any consideration to the fact that Father was suspended from his employment yet again?

IX. Did the [t]rial [c]ourt err and/or abuse its discretion in that it unreasonably found it would be detrimental to the [C]hild if time with Father was minimized but was silent on the detrimental implications of minimizing the [C]hild's time with Mother?

X. Did the [t]rial [c]ourt err and/or abuse its discretion in that it unreasonably found that [F]ather is more capable than Mother of encouraging and permitting frequent and continuing contact between the Child and the other parent, which is not supported by the record?

XI. Did the [t]rial [c]ourt err and/or abuse its discretion by stating that the parents had shared physical custody of the child since birth, which is not supported by the record?

XII. Did the [t]rial [c]ourt err and/or abuse its discretion in that it unreasonably found Mother intent upon restricting Father's role in the Child's life, is not supported by the record?

XIII. Did the [t]rial [c]ourt err and/or abuse its discretion in finding that Mother does not engage in afterschool activities, which is not supported by the record?

XIV. Did the [t]rial [c]ourt err and/or abuse its discretion in stating that Mother has had at least one paramour live in her residence, which is not supported by the record?

XV. Did the [t]rial [c]ourt err and/or abuse its discretion in magnifying Mother's relationships since the birth of the [C]hild, highlighting that Mother has two children with two different fathers and is suggesting that primary custody of the Child would interfere with Mother's social and romantic life, while minimizing Father's relationships including the birth of an additional child born after the separation of the parties?

XVI. Did the [t]rial [c]ourt err and/or abuse its discretion in that it unreasonably found that Mother chooses to forgo travel time with the Child, which is not supported by the record?

XVII. Did the [t]rial [c]ourt err and/or abuse its discretion in that it unreasonably found that certain patterns of Mother's behavior impedes the Child's relationship with Father and that Mother creates situations that frustrate Father, thereby justifying Father's volatile behavior, which is not supported by the record?

XVIII. Did the [t]rial [c]ourt err and/or abuse its discretion in that it unreasonably minimized Father's behavior toward Mother when it characterized it as inappropriate, and suggested that Mother deliberately provokes Father, which is not supported by the record?

XIX. Did the [t]rial [c]ourt err and/or abuse its discretion in unreasonably interpreting testimony to suggest that Father attempts to work with Mother with regard to the Child, which is not supported by the record?

XX. Did the [t]rial [c]ourt err and/or abuse its discretion in unreasonably interpreting the testimony to suggest that Mother

wants primary physical custody of the Child because it would be more convenient for her, which is not supported by the record?

XXI. Did the [t]rial [c]ourt err and/or abuse its discretion when it ordered that Mother's custodial time would begin at 5:00 p.m., when it knew that would require Mother to wait somewhere for over an hour after work before being allowed to pick up the Child?

XXII. Did the [t]rial [c]ourt err and/or abuse its discretion in that it unreasonably suggests that Mother desires that Father only see the Child once a month on a random schedule, which is not supported by the record?

XXIII. Did the [t]rial [c]ourt err and/or abuse its discretion in that it unreasonably inferred that Mother kept her older child from his biological father, which is not supported by the record or biological father's testimony at the prior hearing?

XXIV. Did the [t]rial [c]ourt err and/or abuse its discretion in that it unreasonably did not give consideration to the fact that [F]ather refused to continue with co-parent counseling as ordered and as supported by the record?

XXV. Did the [t]rial [c]ourt err and/or abuse its discretion in that it unreasonably did not give adequate consideration to the extended family and friends of Child in close proximity to Mother's home?

XXVI. Did the [t]rial [c]ourt err and/or abuse its discretion in that it unreasonably did not to give adequate consideration to the strong relationship that the Child shares with his sibling in Mother's home?

XXVII. Did the [t]rial [c]ourt err and/or abuse its discretion in that it unreasonably did not consider the adverse effect Father's uncontrolled anger toward Mother has on the Child, as well as the repeated unfounded reports to the police and the doctor?

XXVIII. Did the [t]rial [c]ourt err and/or abuse its discretion when it reached inconsistent conclusions, which are not supported by the record?

Mother's Brief, at 23-31.

Issue selection is a key hallmark of appellate advocacy. Mother raises an astonishing number of issues—28. This shotgun approach reeks of careless, uninformed appellate advocacy. Justice Robert H. Jackson warned of the dangers of this approach many years ago:

> Legal contentions, like the currency, depreciate through overissue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at a lack of confidence in any one. Of course, I have not forgotten the reluctance with which a lawyer abandons even the weakest point lest it prove alluring to the same kind of judge. But experience on the bench convinces me that multiplying assignments of error will dilute and weaken a good case and will not save a bad one.

Ruggero J. Aldisert, J. "Winning on Appeal: Better Briefs and Oral Argument," at 129 (2d ed. 2003) (quoting Robert H. Jackson, "Advocacy Before the United States Supreme Court," 37 Cornell L.Q. 1, 5 (1951)). This "much quoted" advice, unfortunately, "often 'rings hollow'…." *Commonwealth v. Robinson*, 864 A.2d 460, 480 n.28 (Pa. 2004) (citing Ruggero J. Aldisert, J. "The Appellate Bar: Professional Competence and Professional Responsibility–A View From the Jaundiced Eye of the Appellate Judge," 11 Cap. U.L. Rev. 445, 458 (1982)). But its importance cannot be overstated. *See*, *e.g.*, *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983) ("Experienced advocates since time beyond memory emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues"); *Howard v. Gramley*, 225 F.3d 784, 791 (7th Cir. 2000) ("[O]ne of the most important

parts of appellate advocacy is the selection of the proper claims to urge on appeal. Throwing in every conceivable point is distracting to appellate judges, consumes space that should be devoted to developing the arguments with some promise, inevitably clutters the brief with issues that have no chance … and is overall bad appellate advocacy."); Aldisert, **supra** at 129 ("When I read an appellant's brief that contains more than six points, a presumption arises that there is no merit to *any* of them.")

Mother's raising of such a staggering number of issues causes her another problem. The Rules of Appellate Procedure limit a principal brief to 14,000 words, unless the brief does not exceed 30 pages. **See** Pa.R.A.P. 2135(a)(1). Where the brief exceeds 30 pages, a certificate of compliance with the 14,000 word-count limit must be filed. **See id**.

Here, the substantive portion of Mother's brief spans 54 pages and it fails to include a certificate of compliance. Rule 2101 underscores the seriousness with which this Court takes deviations from procedural rules, as it permits us to quash or dismiss an appeal for procedural noncompliance. Because Mother's violation of the Rules of Appellate Procedure does not hamper our ability to dispose of the matters on appeal, we do not quash or dismiss the appeal. However, we conclude that all content of Mother's brief beyond page 53, which correlates to the first 30 pages of the substantive portion of her brief, is waived for failure to abide by the Rules.

We recognize that all but Mother's first *nine* issues, therefore, are waived. Even if the issues were not waived for failure to abide by the Rules of Appellate Procedure, we would conclude, based upon thorough review of the certified record before this Court, and in light of the foregoing applicable law, that the court did not commit an error of law or abuse its discretion in fashioning the custody order.

With these admonitions in mind, we proceed to the merits. Perhaps not surprisingly, none of Mother's first nine issues has merit.

Our scope and standard of review in custody matters is as follows.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. *Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record.* We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted) (emphasis added).

Further, we have stated:

> [T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding

cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

Pursuant to the Child Custody Act, 23 Pa.C.S.A. §§ 5321-5340, in considering modification of an existing custody order, "a court may modify a custody order to serve the best interest of the child." 23 Pa.C.S.A. § 5338(a). "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well[-]being." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted). Section 5328(a) provides the following enumerated list of factors a trial court must consider.

### § 5328.  Factors to consider when awarding custody.

**(a)** *Factors.* – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

- 10 -

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a); *see also J.R.M. v. J.E.A.,* 33 A.3d 647, 652 (Pa. Super. 2011) (stating that trial courts are required to consider "*[a]ll* of the factors listed in section 5328(a) . . . when entering a custody order").

We have explained:

> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.,* 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013). . . .

*A.V. v. S.T.*, 87 A.3d 818, 822-823 (Pa. Super. 2014).

Instantly, the trial court considered all of the Section 5328(a) custody factors and delineated the reasons for its decision in its opinion that accompanied the subject order. *See* Trial Court Opinion, 3/3/16, at 2-14. The trial court found Section 5328(a)(1), (4), (8), (9), and (10) in favor of Father, and it found the remaining factors equal between the parties or not applicable in this case. With respect to Section 5328(a)(16), any other relevant factor, the court explained its rationale, in part, as follows.

> Father (and the home/community setting Father offers) provide the Child with a nominally more supportive environment than does Mother in her home/community setting, and, further, given both parents' employment in [the School District of Lancaster], the opportunity for both parents to have frequent contact with the Child during his waking hours is enhanced if primary physical custody of the Child is awarded to Father during the school year. Similarly, given both parents['] occupations, the Child should have the benefit of optimizing his time with each parent during the school summer vacation, when a week-to-week shared

- 12 -

physical custody schedule is feasible and is likely to benefit to the Child's relationships not just with both parents but with other family members.

*Id*. at 14.

In her first issue on appeal, Mother asserts that the trial court erred in failing to commence the custody trial within 90 days of the date that the scheduling order was entered pursuant to Pennsylvania Rule of Civil Procedure 1915.4(c). Mother requests that this Court reverse the custody order on this basis. The issue involves a pure question of law. Therefore, our standard of review is *de novo*, and our scope of review is plenary. **See Harrell v. Pecynski**, 11 A.3d 1000, 1003 (Pa. Super. 2011) (citations omitted).

Rule 1915.4(c) provides:

**Rule 1915.4.  Prompt Disposition of Custody Cases**

. . .

**(c) Trial.**  Trials before a judge shall commence within 90 days of the date the scheduling order is entered.  Trials and hearings shall be scheduled to be heard on consecutive days whenever possible but, if not on consecutive days, then the trial or hearing shall be concluded not later than 45 days from commencement.

. . .

Pa.R.C.P. 1915.4(c).

Instantly, the record reveals that, by order entered on June 8, 2015, the trial court scheduled the custody hearing for September 1, 2015, at 10:00 a.m., which was within the requisite 90-day period. Thereafter,

following a pretrial conference on August 19, 2015, by order dated August 21, 2015, and entered on August 24, 2015, the trial court provided, in pertinent part, as follows:

> The significance of this case being scheduled for a 10:00 a.m. starting time was discussed. As of the date of this Order, the [c]ourt has not received word that the 9:00 a.m. hearing has settled. The [c]ourt and counsel agreed that unless the 9:00 a.m. case resolved by August 21, 2015, the hearing in this case will be rescheduled.

Order, 8/24/15, at ¶ 2. By order entered on September 2, 2015, the trial court re-scheduled the hearing for January 8, 2016, as a result of the unrelated case proceeding as scheduled at 9:00 a.m. on September 1, 2015. Thus, the custody hearing commenced approximately 128 days after the September 2, 2015 scheduling order.

However, Mother fails to provide any statutory or case authority to support her argument that a custody order shall be reversed on the basis of the trial not commencing within 90 days of the entry of the scheduling order, and nor are we aware of any. As such, we conclude that Mother's issue is without merit. Mother's first issue fails.

In her second issue, Mother argues that the trial court erred and/or abused its discretion in denying her "request to bypass the custody conciliation conference and to refer this case directly for a trial." Mother's Brief, at 43. Mother baldly asserts that Pa.R.C.P. 1915.4-1 (Alternative Hearing Procedures for Partial Custody Actions) and Pa.R.C.P. 1915.4-3 (Non-Record Proceedings. Trial) do not make custody conciliation

conferences mandatory. She complains that the court "caused inexcusable delay to this case by making the parties appear at a custody conciliation conference at which there was no hope of settlement. . . ." *Id*. at 44.

Mother states in her brief that, on April 15, 2015, she "made her request to bypass the custody conference when she presented her Petition for Modification at Family Business Court, the local motions court in the Court of Common Pleas of Lancaster County. . . ." *Id*. at 43. The record reveals that by order the same date, on April 15, 2015, the trial court denied Mother's request and scheduled a custody conciliation conference for May 28, 2015.

The Rules referenced by Mother, along with Rule 1915.4-2, allow courts to adopt alternative hearing procedures in partial custody actions involving an office conference conducted by a conference officer. ***See*** Pa.R.C.P. 1915.4-1, 1915.4-2, 1915.4-3. The trial court properly observed, however, that Mother cites "no statute, rule of law[,] or local rule of procedure to support" her argument that it erred in not granting her request to proceed directly to a hearing in this case, and nor are we aware of any. As such, we conclude that Mother has waived this issue. ***See In re W.H.***, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) (stating that issues are waived if appellate brief fails to provide meaningful discussion with citation to relevant authority); Pa.R.A.P. 2119(b).

In her third issue, Mother argues that the court erred and/or abused its discretion in deciding the parties' school district dispute in a manner not consistent with its prior order. Specifically, Mother asserts that the prior agreed-upon order, dated May 14, 2014, directed that Child

> would attend kindergarten at the School District of Lancaster, but that the issue could be brought up in the future without prejudice. The modification petition was filed on April 15, 2015, in time to address the 2015-2016 school year, however [it was] not heard until [Child] was halfway through [his] first grade year. The trial court's finding[s] were anything but non-prejudicial regarding the school district issue.

Mother's Brief, at 45.

The May 14, 2014 custody order incorporated the parties' stipulation as follows, in part:

> The Child shall be enrolled at, and attend, Buchanan Elementary for the 2014-2015 school year. The agreement for the [C]hild to attend Buchanan Elementary for the 2014-2015 school year shall be without prejudice to either party raising the ongoing school arrangement that will be in the Child's best interests for subsequent school years.

Order, 5/14/14, at ¶ 1.

We discern no prejudice by the trial court. Upon review, the court carefully and thoroughly considered the parties' requests regarding the school district issue. Further, there is no evidence in the certified record that the court unnecessarily delayed the matter. We conclude that Mother's argument is without merit. Mother's third issue fails.

In her fourth issue, Mother argues that the trial court erred and/or abused its discretion in not permitting the testimony *via* telephone of the

mother of Father's younger child.[2] Specifically, Mother asserts that, "[t]he witness was central towards rebutting the self-serving testimony of Father regarding his parenting abilities, and central to determining the credibility of Father as well." Mother's Brief, at 46.

The record reveals that Mother filed a petition for special relief on January 6, 2016, wherein she requested the testimony *via* telephone of L.C., whom she alleged is the mother of Father's daughter and lives in Iowa. In the petition, Mother asserted that the witness "will substantiate some of the claims that have been made by Mother, and is necessary." Petition, 1/6/16, at ¶ 6. The court denied the petition by order dated January 7, 2016.

> When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.
>
> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

**Phillips v. Lock**, 86 A.3d 906, 920 (Pa. Super. 2014) (citation omitted).

Mother argues that, "[i]t is patently unfair and unreasonable that this witness, who knows Father intimately and resides in Iowa, was not

---

[2] Father testified that, in July 2015, he learned that he has a four-year-old daughter who resides in Iowa, whom he has never met. **See** N.T., 1/8/16, 244-245.

permitted to testify at all. In contrast, one of [F]ather's witnesses, [A.C.], a resident of Father's neighborhood in Lancaster, Pennsylvania, was permitted by the court to testify by telephone." Mother's Brief, at 47. We disagree.

Contrary to Mother's assertion, there is no record evidence that the witness possessed any relevant knowledge in this case. Indeed, the record demonstrates that the witness lives in Iowa; the female child born from the relationship between her and Father is four years old; and Father learned of his daughter's existence approximately six months before the subject proceedings and had yet to meet her. Upon careful review of the testimonial evidence, we discern no abuse of discretion by the trial court in this evidentiary ruling.

Even if the court abused its discretion, we would conclude that it does not constitute reversible error as Mother fails to assert how she was harmed or prejudiced by the ruling. Mother's fourth issue fails.

In her fifth issue, Mother argues that the trial court erred and/or abused its discretion in failing to examine *in camera* Father's employment records. We disagree.

The trial court found that, "[d]uring 2014/2015 academic year, Father was on leave with pay due to his suffering a concussion after a fall at work and to due to an accusation by a student of inappropriate behavior. Father's physical condition healed and the accusation was resolved in Father's favor,

and he returned to work full time for the 2015/2016 academic year." Trial Court Opinion, 4/15/16, at 10, ¶ 50 (footnote omitted).

By order dated August 21, 2015, the court provided:

8. Counsel for Mother has subpoenaed Father's employment records. Counsel for Father considers these records to be irrelevant. The court will examine Father's employment records *in camera* with counsel present to ascertain relevancy as to proof of facts pertaining to parenting in the Child's best interests and/or, potentially, for impeachment purposes. The content of such records shall be maintained in confidence except to the extent necessary for disclosure in the context of this litigation. . . . .

Order, 8/21/15, at 2, ¶ 8. The court explained, however, that it did not review the records *in camera* because "the School District of Lancaster filed a motion to quash the subpoena and the records were not produced. The motion was not disposed of, but Mother did not move to enforce the subpoena." Trial Court Opinion, 4/15/16, at 10, n. 4.

Mother disagrees that a motion to quash was filed in this case. Nevertheless, she fails to assert in her brief that she obtained the records and provided them to the trial court for review. Therefore, we conclude that Mother's argument is without merit. Mother's fifth issue fails.

In her sixth issue, Mother argues that the court abused its discretion in its consideration of the Section 5328(a) custody factors, *supra*. Specifically, she states, "[f]or example, the factors involving extended families and the child's sibling relationships clearly and importantly favor Mother. Yet, the

- 19 -

trial court seems to have difficulty in merely stating that." Mother's Brief, at 50.

With respect to Section 5328(a)(5), the availability of extended family, the trial court found that, "[b]oth sets of [maternal and paternal] grandparents are substantially involved with the Child's life." Trial Court Opinion, 3/3/16, at 5. The court further found that, "Mother has several members of her extended family (in addition to her parents) who reside in the community and who are involved in the Child's life." *Id*. The court specifically noted Child's great uncle and aunt. With respect to Section 5328(a)(6), the child's sibling relationships, the court found, in part, that Child "has a half-sibling in Mother's household, a brother who was approximately twelve years of age. . . ." *Id*. at 6.

Upon careful review, we discern no abuse of discretion by the court in the weight it placed upon Section 5328(a)(5) and (6). As mentioned above, the court placed greater weight upon Section 5328(a)(1), (4), (8), (9), and (10), which it found in favor of Father. In addition, the court weighed under Section 5328(a)(16) the fact that both parents are employed by the School District of Lancaster. Therefore, the court concluded, "the opportunity for both parents to have frequent contact with the Child during his waking hours is enhanced if primary physical custody of the Child is awarded to Father during the school year. . . ." Trial Court Opinion, 3/3/16, at 14. Because the court carefully and thoroughly considered all of the Section 5328(a) factors

in its opinion accompanying the subject order, and further explained its rationale for the custody order in its Rule 1925(a) opinion, we adopt the court's March 3, 2016 and April 15, 2016 opinions as our own.[3] Mother's sixth issue fails.

In her seventh issue, Mother argues the court erred and/or abused its discretion in failing to "give any consideration to Father's history of not testifying truthfully at a prior proceeding." Mother's Brief, at 51. Specifically, Mother asserts:

> The trial court has used its faulty memory to base this decision on prior testimony when it serves Father. Yet, it does not remember the testimony of the father of Mother's older son who testified at a prior hearing that Mother is a great mom. The trial court forgets that Father lied about his first suspension from his position as a school principal at a prior hearing, and the trial court forgets the testimony it heard at a recent support hearing involving Father when the mother of Father's youngest child testified by telephone.

***Id***.

Mother alleges evidence that is not a part of the certified record before this Court. "For purposes of appellate review, what is not of record does not exist." ***Hrinkevich v. Hrinkevich***, 676 A.2d 237, 240 (Pa. Super. 1996) (citation omitted). Therefore, we have no basis upon which to analyze her claim. We conclude that Mother's seventh issue is without merit.

---

[3] The parties are directed to attach a copy of these opinions in the event of further proceedings in this matter.

In her eighth issue, Mother argues that the court abused its discretion in failing to "give any consideration to the fact that Father was suspended from his employment." Mother's Brief, at 52. The crux of Mother's argument is that the court failed to weigh against Father his paid leave during the 2014-2015 school year due, in part, "to an allegation of inappropriate behavior by a student." *Id*. We reject Mother's claim. Based on the court's finding, stated above, that Father was on paid leave due to suffering a concussion, as well as an accusation by a student of inappropriate behavior, both of which were resolved in his favor, we discern no abuse of discretion by the court in the weight it placed upon this evidence in fashioning the subject order. Mother's eighth issue fails.

Finally, in her ninth issue, Mother argues that the court erred and/or abused its discretion in "finding that awarding primary physical custody to Mother would restrict Father's contact with the child. However, the trial court goes on to award primary physical custody to Father without any analysis or consideration of how that award would minimize the child's time with Mother." Mother's Brief, at 53. Mother's claim is without merit.

In its opinion accompanying the subject order, the court stated, in part:

> Mother seeks primary physical custody of the Child not only during both the school year but also during the school summer vacation. She provided no credible rationale for limiting Father's exposure to the Child your round. This arrangement would have a severe impact upon the Child's time and, by extension, his relationship with Father.

Trial Court Opinion, 3/3/16, at 12. Further, the court emphasized in its Rule

1925(a) opinion:

> It is highly significant that Mother believes that during the extended time period when all three members of this triangular relationship - Mother, Father, and Child - are free of their full-time "occupations", i.e., during the school summer vacation, Mother should nonetheless have primary physical custody of the Child, with Father's time with the Child being confined to a limited schedule plus two weeks of vacation. By contrast, Father supported an alternating week fully shared schedule of physical custody of the Child during the summer.

Trial Court Opinion, 4/15/16, at 19. We deem the foregoing conclusions

reasonable in light of the court's sustainable findings of fact. As such,

discern no abuse of discretion in this regard. Mother's ninth issue fails.

Upon review, we conclude that the trial court carefully and thoroughly

considered Child's best interests in fashioning its custody award, and the

record supports the court's decision. Accordingly, we affirm the order.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/18/2016

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW

XXXXXXXXXXXXXXXXXX J.S.F.　　　　　　　　:
　　　　　Plaintiff　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　v.　　　　　　　　　　　　　　　: No. CI-09-09368
　　　　　K.G.F　　　　　　　　　　　　:
XXXXXXXXXXXXXX, n/k/a　　　　　　　　:
XXXXXXXXXXXXXXXX K.G.S　　　　　　　:
　　　　　Defendant　　　　　　　　　　:



## OPINION *SUR* APPEAL

This appeal concerns a child custody case. A Final Custody Order was entered on March 3, 2016. The Defendant (hereinafter, "Mother") filed a timely appeal on March 16, 2016.

### PROCEDURAL HISTORY

Mother filed a Petition for Modification and Contempt in Custody on April 15, 2015, seeking, *inter alia*, primary physical custody of the parties' child, P.F. XXXXXXXXXX (hereinafter, the "Child"). The Plaintiff (hereinafter, "Father") filed an Answer to Petition for Modification on the same date; Father's pleading included "New Matter" which was in essence a counter-claim for primary physical custody of the Child. Mother requested to bypass a Custody Conciliation Conference and proceed directly to a Custody Hearing.[1] The Court denied this request. A Custody Conciliation Conference was held May 28, 2015, and no agreement was reached by the parties. The Custody Conference Officer

---

[1]　　Mother cited no statute, rule of law or local rule of procedure to support such relief.

78

maintained the present custodial arrangement in which the parties share legal and physical custody of the Child pursuant to an Order dated February 28, 2012. A Custody Hearing was scheduled for September 1, 2015, at 10:00 a.m.[2]

The thrust of Mother's Petition for Modification which is the subject of this appeal was that she be granted primary physical custody after which the Child would attend school in the Cocalico School District where she resides. Father's position is that he should be granted primary physical custody of the Child, as a result of which the Child would continue to attend school in the School District of Lancaster, where he attended full-day kindergarten during the prior academic year and where he is presently in the first grade. Both parents are employed as educators by the School District of Lancaster.

Hearings were held on January 8, 2016, January 14, 2016, and February 17, 2016.

---

[2]    As a courtesy to the parties and counsel, rather than compelling the parties, counsel, and witnesses to be ready to proceed on September 1, 2015, regardless of the status of the case scheduled for 9:00 a.m. on that date, counsel were advised that if the 9:00 a.m. case came off the Court's schedule for any reason, the Court would advise them in sufficient time so they could be prepared to proceed with the Hearing on September 1. By the time the Court was advised by counsel in the case listed for 9:00 a.m. that a settlement had been reached, it was too late for counsel to be prepared to proceed with the hearing on September 1, 2015, and by agreement and without objection from either party the instant case was rescheduled to January 8, 2016.

-2-

# FINDINGS OF FACT

P.F.

1. XXXXXXXXXX, the child of the parents, was born May 1, 2009. He is hereinafter referred to as the "Child". (N.T. 01/08/2016 at page 6 and page 244; Findings and Order dated March 3, 2016)

2. Mother has been employed as an educator in the School District of Lancaster for eleven years. (N.T. 01/08/2016 at page 6 and page 54)

3. Father also is employed as an educator in the School District of Lancaster. (N.T. 01/08/2016 at pages 225-226 and pages 234-235)

4. Both parents have been employed as educators in the School District of Lancaster since before the Child was born. (N.T. 01/08/2016 at page 234)

5. Prior to the beginning of the present hearings, the parties operated under a court order with a shared physical custody arrangement in respect to the Child whereby the Child was exchanged several times each week on a rotating bi-weekly schedule. (N.T. 01/08/2016 at page 7 and page 247)

6. Mother did not like the then current custody schedule because she believed there was too much back and forth for the Child's well being. (N.T. 01/08/2016 at page 7)

7. Father had concerns about the then current physical custody schedule because it lacked the consistency and routine he

-3-

believes is in the Child's best interest. (N.T. 01/08/2016 at page 247)

8. Mother has another child, X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶ A.E., who is 12 years old and lives with her. (N.T. 01/08/2016 at pages 5 and page 7)

9. When Father and Mother were an intact family, Father was substantially the "father" figure for Mother's son X̶X̶X̶X̶ A.E.. (N.T. 01/08/2016 at page 68 and N.T. 01/14/2016 at page 19)

10. Mother permitted Father to see X̶X̶X̶X̶ A.E. after they separated; she then stopped contact, reinstated it, and then stopped it again. (N.T. 01/08/2016 at pages 115-117, 160 and Plaintiff's Exhibit 2, 01/08/2016)

11. The biological father of X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶ A.E. is X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶a R.E., who sees X̶X̶X̶X̶ A.E. about once a month. (N.T. 01/08/2016 at pages 75-76 and pages 162-163)

12. Mother is comfortable with that arrangement in respect to X̶X̶X̶X̶ A.E.'s father. (N.T. 01/08/2016 at pages 76-77)

13. Father has a second child who is a girl. Father did not learn that he is the parent of a second child until July of 2015 when the second child was four years of age. (N.T. 01/08/2016 at page 244 and N.T. 02/17/2016 at page 49)

-4-

14. Father's second child resides in Davenport, Iowa. Father has not seen his second child because that child's mother does not divulge information.[3] (N.T. 02/17/2016 at page 49)

15. Mother had a current boyfriend whom she had been seeing for seven months as of the time of the first hearing on January 8, 2016. (N.T. 01/08/2016 at pages 16-17)

16. Mother's boyfriend was known to the Child. Mother's boyfriend was very supportive of Mother and her children in respect to the children's various activities. (N.T. 01/08/2016 at pages 52-53)

17. By the time of the final hearing, Mother had ended her relationship with the boyfriend. (N.T. 02/17/2016 at page 55 and page 65)

18. Both parents attend the Child's medical appointments. (N.T. 01/08/2016 at page 49)

19. The Child is presently in the first grade. (N.T. 01/08/2016 at page 6)

20. Mother desires that the Child attend school at Reamstown Elementary in the Cocalico School District for the upcoming school year which is close to where she lives, as opposed to Buchanan Elementary School, the school the Child

L.V.

---

[3] Mother requested that the mother of Father's second child, XXXXX XXXXX, be permitted to testify against Father. Father objected as to relevancy. By Order dated January 7, 2016, the Court denied Mother's request. Mother did not renew her request to have this witness testify on the record, and therefore Mother failed to preserve this ruling as an alleged error for review upon appeal.

-5-

presently attends within the School District of Lancaster where she works. (N.T. 01/08/2016 at page 6 and page 54)

21. Mother prefers Reamstown Elementary School based upon her personal experience with son A.E. XXXX, who attended that school for five academic years. (N.T. 01/08/2016 at pages 54-5)

22. As academic year 2014-2015 approached, both parents agreed that the Child remain in the School District of Lancaster. The agreement was made without prejudice to future determinations regarding where the Child should attend school. (N.T. 01/08/2016 at page 55)

23. Mother agreed to that arrangement because Buchanan Elementary School offered full-day kindergarten while Reamstown Elementary School offered only half-day kindergarten. (N.T. 01/08/2016 at page 55 and pages 104-105)

24. The Child has an established routine at Buchanan Elementary School. (N.T. 01/08/2016 at pages 247)

25. The Child sustained a puncture wound to his upper thigh in November of 2015, apparently while he was at school. (N.T. 01/08/2016 at pages 12-13)

26. Mother is concerned that the Child is bullied at Buchanan Elementary School. Mother reported her concern to the school nurse but she has not reported her concern to the principal, to the Child's teacher, or to a guidance counselor. (N.T. 01/08/2016 at pages 87-88)

-6-

27. The incidence of bullying within the School District of Lancaster is statistically insignificant. (N.T. 01/08/2016 at pages 110-111)

28. Father's home is five minutes in travel time from the Child's present school, Buchanan Elementary School. (N.T. 01/08/2016 at page 105)

29. Mother's home is thirty minutes in travel time from the Child's present school, Buchanan Elementary School. (N.T. 01/08/2016 at page 106)

30. If the Child attends Reamstown Elementary School, Mother will not be able to take the Child to school or to pick up the Child from school due to her work schedule. (N.T. 01/08/2016 at page 18 and page 100)

31. There is greater racial and ethnic diversity among the student body at Buchanan Elementary School than there is at Reamstown Elementary School. (N.T. 01/08/2016 at pages 108-109)

32. The Child is doing very well in school. (N.T. 01/14/2016 at page 30)

33. It would be traumatic for the Child to changes schools. (N.T. 01/14/2016 at page 17)

34. Father avails himself of all opportunities to participate in events at the Child's school. (N.T. 01/14/2016 at pages 15-16)

35. Mother attends parent-teacher conferences in respect to the Child at Buchanan Elementary School. (N.T. 01/08/2016 at page 50 and page 99)

36. Father attends parent-teacher conferences in respect to the Child and the annual back to school night at Buchanan Elementary School. (N.T. 01/08/2016 at page 50 and pages 226-227)

37. Since the Child has attended school, there have been several after-hours school related events during Mother's periods of physical custody that Mother and the Child did not attend. (N.T. 01/08/2016 at page 93 and page 98)

38. Mother has not facilitated Father having additional time with the Child to take the Child to after-school events. (N.T. 01/08/2016 at page 93 and page 98)

39. The Child has been subjected to injuries which caused bruising by X̶X̶X̶X̶ ^A.E., by X̶X̶X̶X̶ ^R.E., and by the Child's paternal grandfather during Mother's periods of physical custody. (N.T. 01/08/2016 at pages 78-80, 157-158 and 213-214, Plaintiff's Exhibits 11 and 12, 01/14/2016)

40. Mother does not provide adequate supervision when the Child is in her care and the Child has been injured as a result. (N.T. 01/14/2016 at page 21)

41. In October and November of 2015, Mother noticed concerning behaviors regarding the Child, but Mother took no

-8-

85

action with regard to these concerns. (N.T. 01/08/2016 at pages 111-112)

42. Father had enrolled the Child in counseling in 2013, but Mother does not believe that the child needs therapy. (N.T. 01/08/2016 at pages 45-47 and pages 90-91)

43. Father has a very loving relationship with the Child and Father is attentive to the Child's needs. (N.T. 01/08/2016 at pages 228-230 and page 251)

44. Father owns his home and has resided there for four years. (N.T. 01/08/2016 at page 233)

45. Father provides an established schedule for the Child while the Child is in his physical custody. (N.T. 01/14/2016 at pages 7-9 and 11)

46. The Child has several friends in Father's immediate neighborhood. (N.T. 01/08/2016 at page 255)

47. Father and the Child occasionally entertain friends of the Child for sleep-overs at Father's home. (N.T. 01/08/2016 at page 259)

48. Mother has resided in her home for five and one-half years. (N.T. 01/01/2016 at pages 5-6)

49. The Child spends significant social time at Mother's parents home during warm weather (as they have a swimming pool) and the Child socializes with extended family there. The Child is the youngest child among the group of cousins. (N.T.

-9-

01/08/2016 at pages 64-65, pages 153-154, page 165, page 175, and pages 195-196)

50. During the 2014/2015 academic year, Father was on leave with pay due to his suffering a concussion after a fall at work and due to an accusation by a student of inappropriate behavior. Father's physical condition healed and the accusation was resolved in Father's favor, and he returned to work full time for the 2015/2016 academic year.[4] (N.T. 01/08/2016 at pages 237-240)

51. During the year that Father was on paid leave, Father devoted himself to maximizing every opportunity to spend time with the Child. (N.T. 01/08/2016 at page 240)

52. Father prioritizes one-on-one time with the Child during his periods of physical custody whereas Mother tends to have her extended family around the Child constantly during her periods of physical custody. (N.T. 01/14/2016 at pages 25-26 and pages 42-43)

53. Mother does not believe that her relationship with the Child would be hurt if Father was to have primary physical custody of the Child because the relationship between Mother and the Child is strong. (N.T. 01/08/2016 at pages 132-133)

---

[4] Mother attempted to gain access to Father's confidential employment records. The Court, by Order dated 8/21/2015, was willing to examine the records in camera over Father's objection to relevancy. However, the School District of Lancaster filed a motion to quash the subpoena and the records were not produced. The motion was not disposed of, but Mother did not move to enforce the subpoena.

-10-

54. Father suggests that Mother should have custody on school holidays that fall on her weekends and an expanded period of physical custody of the Child during the Christmas holiday school recess. (N.T. 01/14/2016 at pages 14-15)

55. Mother would not encourage contact between Father and the Child if she were granted primary physical custody of the Child. (N.T. 01/14/2016 at page 22)

56. Father earnestly attempts to co-parent with Mother. (N.T. 01/14/2016 at page 24)

57. The Child is exposed to inappropriate movies for his age during Mother's custodial periods. (N.T. 01/14/2016 at pages 59-60)

58. Father's phone calls to the Child during Mother's custodial periods took place on a speaker phone with other people speaking in the background, which makes it all but impossible for Father to have a conversation with the Child. (N.T. 01/14/2016 at pages 60-62)

59. Father sends Mother e-mails regarding co-parenting issues. (N.T. 01/08/2016 at page 92)

60. Mother is generally uncooperative with Father regarding the Child. (N.T. 02/17/2016 at pages 52-55)

61. Father has had one romantic relationship during the past several years. (N.T. 01/14/2016 at page 65)

-11-

62. Mother wishes to go from a shared physical custody arrangement to her having primary physical custody of the Child year round, despite the fact that both Mother and Father are educators who are fully available to the Child during the school summer vacation. (N.T. 01/08/2016 at pages 127-129)

63. Father requested primary physical custody of the Child during the school year and a shared physical custody arrangement during the school summer vacation. (N.T. 01/14/2016 at pages 13-14 and 20)

## CONCLUSIONS OF LAW

1. The best interests of the Child, based upon the factors as delineated at 23 Pa. C.S.A. § 5328 (a) that legitimately affect this Child's physical, intellectual, moral and spiritual well-being will be best served by granting primary physical custody to Father during the school year.[5]

2. Father is more likely to encourage and permit frequent and continuing contact between the Child and Mother than Mother is to encourage and permit frequent and continuing contact between the Child and Father.

3. Father will provide greater stability and continuity in the Child's education, family life and community life.

---

[5] All of the factors stated in 23 Pa. C.S.A. § 5328 (a) were addressed in the Court's Memorandum Opinion and Order dated March 3, 2016, and will not be repeated herein.

-12-

## DISCUSSION

The polestar for the Court in a child custody proceeding is to determine the best interest of the child.

> The paramount concern in a child custody case is the best interests of the child, based on a consideration of all factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being. This determination is to be made on a case by case basis. *Speck v. Spadafore*, 895 A.2d 606, 609 (Pa.Super. 2006)(quoting *Swope v. Swope*, 455 Pa. Super. 587, 689 A.2d 264, 265 (1997); citing *Myers v. DiDomenico*, 441 Pa. Super. 341, 657 A.2d 956, 957 (1995).

Chapter 53 (contained in the Domestic Relations Act), known as the "Custody Act", requires that when making a custody award, "[t]he court shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa. C.S.A. 5323(d). The Court complied with this provision in its Order dated March 3, 2016. Those Findings are incorporated herein and made part of this Opinion *Sur* Appeal.

The Superior Court's role in reviewing a Custody Order is as follows:

> We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determination. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of

-13-

law, or are unreasonable in light of the sustainable findings of the trial court.

With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child. *J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa.Super. 2011)

As the trier of fact, this Court determines credibility, as long as the findings are supported by competent evidence. *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa.Super.2004), *Dranko v. Dranko*, 824 A.2d 1215, 1219 (Pa.Super.2003)(citing *Robinson v. Robinson*, 538 Pa. 52, 57, 645 A.2d 836, 838 (1994); *Andrews v. Andrews*, 411 Pa.Super. 286, 601 A.2d 352, 353 (1991) *affirmed*, 533 Pa. 354, 625 A.2d 613 (1993).

The Superior Court, in its non-precedential opinion issued on April 10, 2015, in the case of *A.D.W. v. L.A.K.*, 2015 WL 7289342, and citing *C.R.F. v. S.E.F.*, 45 A.3d 441, 445 (Pa.Super. 2012), reiterated the standard of review it applies in custody cases:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions

-14-

of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court. *C.R.F.*, *supra*, at 443.

We have stated:

> [t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record. *Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa.Super. 2006) quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa.Super.2004).

In *M.A.T. v. G.S.T.*, 989 A.2d 11 (Pa.Super. 2010) (*en banc*), we stated the following regarding an abuse of discretion standard:

> Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence. *Id.* at 18-19.

The instant case has been before the Court many times during the Child's young life, and no one familiar with it would characterize it as anything other than a "high conflict" case. In the immediate setting, however, the compelling reason that it is before the Court is that both parents are concerned about the Child's ability to continue to succeed in school if the schedule of physical custody of the Child now in place remains in effect.

-15-

92

The Child is presently in the first grade. School has become the Child's full-time occupation during the academic year. The parents are in agreement that it is not in the Child's best interest that he be shuttled back and forth between their homes during the academic year. The distance and travel time between the parents' homes is a compelling consideration. Each of the potential academic settings has advantages and disadvantages. One may have slight educational advantages. One may have certain social and societal advantages. On balance, there is no "clear winner" in respect to the schools themselves. That result, in itself, is not unusual.

However, there is a factor present in this case which is atypical. Both parents are full-time employees of the School District of Lancaster. In the Court's estimation, this factor has distinct advantages for the Child. Both parents are accessible to the Child during their work days should any emergency arise. Both parents are accessible to the Child to attend school-related activities which occur after school. Depending upon their own professional schedules and flexibility, both parents are available to attend the Child's in-school activities. None of this accessibility and availability would pertain if the Child attends school in the Cocalico School District. Additionally, both parents are well familiar with the School District and have connections to and knowledge about its

-16-

professional staff and curricula. Undoubtedly, both parents have
gained insights about how to maximize the Child's educational
experience within the School District of Lancaster.

Further, while there is some inconvenience for Mother
associated with school-related activities which occur later in
the evening if the Child remains in the School District of
Lancaster (as Mother would either have to stay in Lancaster or
make a round trip home and back), both parents would be
substantially excluded from participating in the Child's in-
school activities if the Child attended school in the Cocalico
School District. At minimum, they would be burdened by being
forced to take leave or vacation, as any participation would
ostensibly require a half-day away from their professional
assignments.

On balance, this Court is of the opinion that it is in the
Child's best interest that he remain a student in the School
District of Lancaster. For the sake of the Child's stability and
consistency during the academic year, that determination
mitigates in favor of placing the Child in Father's physical
custody during those times when school is in session. That
issue, however, is not the only issue.

Not unlike the rest of humanity, Father and Mother each have
their positive qualities and each have their flaws. They each
have unique and peculiar circumstances in their lives, and their

-17-

94

lives now intersect only in respect to their relationship with, and responsibility to, the child whom they share. Because of their inability to resolve their differences, it is this Court's obligation to strive to find what is in the Child's best interest going forward, based upon the record presented.

The Court has attempted to identify in the above Findings of Fact the most salient realities which define a path centered upon the Child's present and future needs. That path, once laid out, led to the Court's determination that the best interest of the Child requires that primary physical custody of the Child be awarded to Father, at least for the time being.

An assessment of Mother's behaviors disclose that, as suggested by Father, Mother is perfectly comfortable with minimizing the role that the fathers of her two sons play in their lives. That is the established arrangement in respect to her older son; apparently that boy's father is complacent about the arrangement. It is also evident in the manner in which Mother was willing to exclude Father from the life of her older child, to whom Father had fulfilled a paternal role, after Mother and Father's marriage dissolved. However, in the instance of the Child and Father, Father is anything but complacent in respect to his engagement with the Child. Father has steadfastly insisted that he should be afforded the right and the opportunity to actively parent the Child. There are numerous indications that

-18-

Father has designed his life around his commitment to not only meet, but to exceed, the Child's needs in every respect. In response, Mother has thrown obstructions in Father's way at almost every opportunity, and has displayed a distinct motive to be uncooperative. It is not lost upon the Court that Father has the ability to be abrasive and abrupt at times, and that the parties' inability to communicate is not exclusively Mother's fault. However, when the psychological and emotional needs of a child are at stake, it is incumbent upon the responsible adults to find ways to get beyond their personal differences. It is highly significant that Mother believes that during the extended time period when all three members of this triangular relationship - Mother, Father, and Child - are free of their full-time "occupations", i.e., during the school summer vacation, Mother should nonetheless have primary physical custody of the Child, with Father's time with the Child being confined to a limited schedule plus two weeks of vacation. By contrast, Father supported an alternating week fully shared schedule of physical custody of the Child during the summer. As between the two parents in this case, it is this Court's assessment, based upon the factual record and the attitudes evident in their demeanor while on the stand, that Mother strays when measured against the statutory factors which favor parents who encourage a child to have meaningful relationships with both parents and which bear on

-19-

attempts to turn a child against a parent (as such attempts may be overt or subtle, as in the present case). This Court's analysis of these key factors, and of the balance of the statutory factors, is extensively elucidated in the Findings and Order issued by this Court on March 3, 2017, which are the subject of the present appeal.

In its Order, this Court has directed an orderly arrangement which is intended to, and should, support the Child's needs while he is engaged in his academic studies. For those times while he is not so engaged, this Court has directed an orderly arrangement which is intended to, and should, enable both Mother and Father to have meaningful periods of time with the Child and which will enable the Child to enjoy relationships with his parents while also enjoying his time with his half-brother in Mother's home, his cousins and maternal grandparents at Mother's parents' home, and his neighborhood friends around Father's home. This overall arrangement is intended to, and should, provide balanced intellectual, social, and emotional enrichment opportunities for the Child in settings which are stable and nurturing.

In another iteration of the definition of an "abuse of discretion", the Superior Court has stated: "[an] abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly

-20-

unreasonable or the product of partiality, prejudice, bias or ill will, discretion will be abused." *Bulgarelli v. Bulgarelli*, 934 A.2d 107, 111 (Pa.Super. 2007).

This Court respectfully submits that no error of judgment, and most certainly no abuse of this Court's discretion, has occurred in this case.

## CONCLUSION

For all of the above reasons, the Court suggests that Mother's appeal lacks merit, and respectfully further suggests that the Custody Order entered on March 3, 2016, should be affirmed.

BY THE COURT:

JEFFREY J. REICH, JUDGE

Dated: April 15, 2016

Copies to:

M. Lucile Longo, Esquire
Honaman, Longo & Longo
15 North Lime Street
Lancaster PA 17602

Jozefa K. Jackson, Esquire
643 West Chestnut Street
Lancaster PA 17603

NOTICE OF ENTRY OF ORDER OR DECREE
PURSUANT TO PA. R.C.P. NO: 236
NOTIFICATION - THE ATTACHED DOCUMENT
HAS BEEN FILED IN THIS CASE
PROTHONOTARY OF LANCASTER CO., PA
DATE: 4-15-16

-21-

98

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA

CIVIL ACTION - LAW

XXXXXXXXXXXXXX J.S.F.
         Plaintiff

         v.
                 K.G.F.
XXXXXXXXXXXXXX n/k/a
XXXXXXXXXXXXXX K.G.S.
         Defendant

ENTERED AND FILED
2016 MAR -3 PM 3:48

PROTHONOTARY'S OFFICE
LANCASTER, PA

No. CI-09-09368

## FINDINGS

Upon consideration of the Defendant's Petition for Modification and Contempt in Custody Order filed April 15, 2015, and the Plaintiff's Answer to Petition for Modification, and after hearings held January 8, 2016, January 14, 2016, and February 17, 2016, at which the Plaintiff (hereinafter, "Father") was present and was represented by M. Lucile Longo, Esquire, and the Defendant (hereinafter, "Mother") was present and was represented by Jozefa F. Jackson, Esquire, the Court makes the following findings, giving weighted consideration to those factors which affect the safety of the child of the parents, P.J.F. XXXXXXXXXXXXXX (date of birth May 1, 2009; hereinafter, the "Child").

In ordering any form of custody, the Court must determine the best interests of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child. See 23 Pa. C.S.A. § 5328 (a).

561a

Based upon the testimony and other evidence admitted at the hearing, the Court makes the following findings in respect to the issue of custody of the Child:

1. *Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.*

Father is more capable than Mother of encouraging and permitting frequent and continuing contact between the Child and the other parent. The Court issued its first Interim Order in this custody action on November 30, 2009. Father filed the initial petition for custody as Mother was attempting to withhold the Child from Father since the Child's birth. Apparently, from the evidence adduced during the most recent round of hearings, Mother remains intent upon restricting Father's role in the Child's life.

2. *The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.*

There is no issue of past or present abuse committed by a party or a member of the party's household.

3. *The parental duties performed by each party on behalf of the children.*

Both parents are able to perform and have performed typical parenting duties. Since the Child's birth, the parents have been following a shared physical custody arrangement for the most part. Coming in to the present proceedings, the schedule called for a rotation wherein the Child, who is presently in the first grade, shifts physical custody between his parents frequently during the school week.

4. *The need for stability and continuity in the child's education, family life and community life.*

Mother requests an award of primary physical custody of the Child. If such were to be granted, a concomitant effect would be a change from the Child's present school in the School District of Lancaster ("SDL") to a school in the Cocalico School District. Each school district has its advantages and its disadvantages. The population in SDL is far more diverse, which is among its advantages. As both parents work as educators for SDL, they have the ability to discern and potentially implement choices for the Child in terms of teachers and educational placements. Cocalico may have an overall stronger academic performance quotient, but that is likely related to the socio-economic status of its population. The Child has, and will have, the benefit of a enriched learning experience through his family which should

-3-

enable his performance to be at the higher side of the academic performance curve in SDL.

Mother expressed concerns that the Child has been bullied by classmates at SDL. Without minimizing the potential harm which may result if bullying behavior is unchecked, it must be noted that bullying is the complaint *de jour* and that bullying occurs among children of all backgrounds. Stories of bullying among students at elite preparatory schools are legend; there is little doubt that it occurs in SDL or that it also occurs in Cocalico. The question is whether the institution identifies the problem and responds appropriately. Here, there was concern about inadequate response. Again, given the professional nexus between both parents and SDL, it is anticipated that they have the ability to motivate institutional response should any bullying become problematic, especially if they can lay aside their personal enmity and work together toward that end.

Father engages in after-school activities with the Child. Mother does not. While it is more convenient for Father to do so, Mother ends each school day close-by to the Child's school and it is not impractical for her to be more active than she has been to date. It is noted that when this family was intact, they lived in a place convenient to SDL. After separation, Mother chose to move to the Cocalico School District area, as she lived with her parents there for a period.

The scale tips to Father as the parent more able to provide stability and continuity in the Child's family life. While both parents have had a succession of paramours since they were an intact family, Mother has had at least one paramour live in her residence. In fact, Mother had her then-current paramour (yet another SDL teacher) testify on her behalf at one of the recent hearings, but by the time of the final hearing they were no longer together.

In regard to community life, Father's home is located in a traditional neighborhood of modestly sized homes on smaller lots. There is a park nearby. The Child has the benefit of having other children of similar age who live nearby, and he has developed healthy neighborhood friendships.

Mother's home is situated in a less compacted neighborhood in a rural town. The testimony suggested that most of the Child's social activity outside of the home during Mother's periods of physical custody occurs at the maternal grandparents' home, which is about one mile from Mother's home.

5. *The availability of extended family.*

Both sets of grandparents are substantially involved with the Child's life.

Mother has several members of her extended family (in addition to her parents) who reside in the community and who are involved in the Child's life. Notably, there is a great uncle

-5-

and aunt who often transport the Child to school during Mother's periods of partial physical custody. The uncle is a retired SDL educator; he testified that the time spent with the Child is enjoyable, and no doubt the Child is enriched by this relationship. At the same time, this travel time is time which Mother has available to her to spend with the Child which she chooses to forego for her convenience.

    6. *The child's sibling relationships.*

The Child has a half-sibling in Mother's household, a brother who is approximately twelve years of age. This Child testified at the hearing. He was mannerly and presented well. He indicated he has a good relationship with the Child. However, there are concerns that at times these two boys engage in "rough-housing" that may be too much for the Child, and the Child has sustained some injuries.

Father has another child who is approximately 4 years of age and who resides in Iowa with her mother. Father has not established a relationship with this child; he testified that he only became aware of this child during the summer of 2015. At present, the Child, like Father, has no relationship with this half-sister to the Child.

-6-

7.      *The well-reasoned preference of the child, based on the child's maturity and judgment.*

The Court did not interview the Child due to his young age. Therefore, this factor is not relevant.

8.      *The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.*

The Court finds neither parent has actively attempted to turn the Child against the other parent, at least in terms of direct communication by a parent to the Child.

There are concerns, however, about certain patterns of Mother's behavior which impede the Child's relationship with Father. Mother is generally unwilling to change the physical custody schedule if Father requests a reasonable modification. Mother creates situations that frustrate Father, such as in respect to Father's attempts to maintain telephone contact with the Child while the Child is in Mother's physical custody. Mother places the Child on a speaker phone while others are present in the room, which undermines Father's opportunity to have a meaningful conversation with the Child. There was a suggestion that the Child prefers to use a speaker phone or does not know how to use a handset. Obviously, teaching the Child to

-7-

use a handset and instructing him about the value of private communication would take a few minutes.

Mother did not believe the Child needed counseling in the past, and she did not participate when the Child was in counseling.

In summary, Mother performs the minimal required interaction with Father pursuant to the current Order. She refuses to work with Father. Father attempts to work with Mother with regard to the Child, but to no avail.

9. *Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.*

Both parents are capable of maintaining a loving relationship with the Child. Both parents are able to provide stability, consistency and a nurturing environment for the Child's emotional needs. Both parents are keen on nurturing the Child. However, Father has a more stable environment for the Child than does Mother. Father has furnished his home and has built his schedule around the Child's needs. His life revolves around the Child during those times when the Child is in his physical custody. By comparison, Mother has principal responsibility for parenting her older child (whether by design or by default in respect to that child's father). As proposed by Mother, she would see herself primarily parenting two boys with

-8-

568a

two different fathers while maintaining a social and romantic life for herself. While this would not be impossible and often does occur, it is clear that at present Father is in a better position than Mother to devote time and attention to the Child.

10. *Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.*

As previously noted, the Child is presently in the first grade. Both parents are educators and presumptively have had more formal education about child development than the typical parent. Mother is a more experienced parent than Father, in that she has raised her older son to age twelve substantially by herself and by appearances she has done creditably well. However, again, Father is 100% committed to meeting the Child's needs in each of the specified respects except "special needs" (as the Child has no identified "special needs" at this time).

11. *The proximity of the residences of the parties.*

The parents live approximately 35 to 45 minutes apart by car, depending upon the amount of traffic. The parents are both educators working within SDL. They work at locations within the city of Lancaster which are relatively close to the school which the Child attends. A year ago Mother agreed that the Child remain in the School District of Lancaster. The basis of Mother's modification petition is she now seeks primary physical

-9-

569a

custody and, as noted above, to enroll the Child in the school district where she resides, which is the Cocalico School District. The Cocalico School District is at the northern end of Lancaster County. If the Child attends school in the Cocalico School District, it will be burdensome or impossible for Father to participate in any of the Child's in-school or after-school school-related activities, including parent-teacher conferences. By contrast, Mother, due to her employment with SDL, already is close-by to the Child's current school and may readily attend such activities should she so choose.

12. *Each party's availability to care for the child or ability to make appropriate child-care arrangements.*

Both parents are able to care for the Child. Both parents have extended family who are available to care for the Child.

13. *The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.*

Sadly, there is substantial conflict between the parents. Co-parenting had been ordered by this Court before, but it was not completed. At this juncture it is hoped the parents will move beyond their past animosity for the sake of the Child.

-10-

570a

14. *The history of drug or alcohol abuse of a party or member of a party's household.*

There is no history of drug or alcohol abuse regarding either parent.

15. *The mental and physical condition of a party or member of a party's household.*

There is no mental or physical condition of a parent or a member of the parent's household that presents a concern to the Court in respect to the Child's safety or welfare.

16. *Any other relevant factor.*

Mother claims she has concerns with Father's mental state and for the Child when the Child is in Father's physical custody. There is no evidence to suggest that these concerns are valid.

The Child sustained bruises while in Mother's care. Father took the Child to a doctor. Father contacted the Lancaster County Children and Youth Social Service Agency about the injuries. The bruises were a result of typical childhood play. Mother asserts this behavior on the part of Father is troubling. While Father may have displayed some hyper-vigilance, his concerns are understandable and, without endorsing hyper-vigilance, they are not atypical in a highly conflicted relationship where child custody is at stake.

Mother claims that Father says inappropriate things about her within the hearing range of the Child. The Court does not

-11-

571a

credit this testimony. While Father has at times said inappropriate things to Mother (not necessarily in the presence of the Child), Mother deliberately provokes Father in such a way that frustrates him. Certainly, both parents need to avoid verbal communication, non-verbal communication, and behavior patterns which tend to denigrate the other parent or to undermine the other parent's relationship with the Child. Father needs to control his remarks; Mother needs to refrain from provoking Father gratuitously.

Mother seeks primary physical custody of the Child not only during both the school year but also during the school summer vacation. She provided no credible rationale for limiting Father's exposure to the Child year round. This arrangement would have a severe impact upon the Child's time and, by extension, his relationship with Father. It appears that Mother wants primary physical custody of the Child because it would be more convenient for her and the concomitant effect of substantially diminishing the Child's contact with Father is of little concern to her. The father of Mother's elder child is nominally involved with that child, and sees his child about once a month on a random schedule. Mother is apparently comfortable with that arrangement, and she desires the same outcome for the Child. When the parents were an intact family, Father was a "father figure" to Mother's elder child. Upon the parties'

-12-

separation, Mother stopped contact between Father and the half-sibling. Subsequently, there was one outing which included Mother, Father, Mother's elder child, and the Child, which apparently went well. However, Mother has not followed-up with any opportunities to re-establish a relationship between Father and her elder child for that child's benefit. Again, this behavior raises concerns that Mother is inclined to diminish Father's role in the Child's life.

While there are a number of considerations which lead the Court to enter the Order expressed below, the Court agrees with Mother that it is not in the Child's best interest to continue shuttling him back and forth between the parents' homes while school is in session, given the distance between the parents' homes and the resulting travel time. The Child is now of an age where he must embrace his education as his primary pursuit, with a reasonable balance between school and family/community life. At the same time, the Child has not yet reached the age where a week-to-week shared physical custody schedule will serve his needs; rather, as a first grade student and as Mother has suggested, it is preferable for the Child to be settled in one parent's home during the school week, so that he has stability and consistency in his daily schedule. This reality places the Court in the position of making a hard choice under less than ideal circumstances (such as would be the case if the parents

-13-

lived in close enough proximity to allow for frequent contact with the Child by both parents regardless of where the Child was spending his nights). Upon reflection, Father (and the home/community setting Father offers) provide the Child with a nominally more supportive environment than does Mother in her home/community setting, and, further, given both parents' employment in SDL, the opportunity for both parents to have frequent contact with the Child during his waking hours is enhanced if primary physical custody of the Child is awarded to Father during the school year. Similarly, given both parents occupations, the Child should have the benefit of optimizing his time with each parent during the school summer vacation, when a week-to-week shared physical custody schedule is feasible and is likely to benefit the Child's relationships not just with both parents but with other family members.

## ORDER

AND NOW, this 3rd day of March, 2016, the Court enters this Order in this child custody action regarding ᴘ.J.F. XXXXXXXXXXXXX (date of birth May 1, 2009; hereinafter, the "Child"):

1. Father and Mother shall have shared legal custody of the Child, such that each parent shall have the right to participate in the major decisions affecting the Child, including, but not limited to, medical, religious and educational

-14-

decisions. Father and Mother shall provide to each other advance information on a timely basis regarding the Child's school programs and events and medical, dental, or other professional appointments, as each may receive the same. Each parent shall provide the other parent with advance information on a timely basis regarding school programs, events, meetings and teacher conferences involving the Child, as such information becomes available.

2. Primary physical custody of the Child shall be with Father during the school year.

3. Partial physical custody of the Child shall be with Mother during the school year as follows:

(a) On alternating weekends, from Friday at 5:00 p.m. until Sunday at 5:00 p.m., commencing Friday, March 4, 2016;

(b) Every Wednesday from after school until the beginning of school on Thursday (or, if there is no school, until 5:00 p.m.); and,

(c) At such other times as the parents may agree.[1]

4. The Child shall continue to attend Buchanan Elementary School in the School District of Lancaster.

---

[1] It is understood that at the Child's age and developmental level, frequent contact between the Child and both parents is to be encouraged. By including this provision, it is the Court's hope that Mother will be afforded frequent "as agreed" opportunities to spend time with the Child for activities after school or on school holidays (whether or not such activities are school related). It is noted that Father indicated in his testimony that he is willing to facilitate such contacts.

-15-

5.    (a)  During the summer break from school[2], Father and Mother shall have shared physical custody of the Child on an alternating weekly basis, from Friday at 5:00 p.m. until the following Friday at 5:00 p.m., with Mother having the first such week.

(b)  Each parent shall have the option of extending his or her week to 5:00 p.m. on the Sunday following the end of such parent's week twice during the school summer vacation.    Each parent shall provide the other parent written notice at least thirty (30) days in advance of their intended dates for vacation weeks.[3]

6.    Mother's Day and Father's Day:

Mother shall have physical custody of the Child on Mother's Day, and Father shall have physical custody of the Child on Father's Day.  The times for such holiday periods of physical custody of the Child shall be from the evening before each holiday (Saturday) at 6:00 p.m. until the evening of each holiday at 6:00 p.m.

---

[2]    For purposes of this Order, the "summer break from school" is defined as beginning on the first Friday which is not less than three days after the last day the Child is required to attend school and ending on the last Friday which is not less that three days before the first day of school.

[3]    The purpose of this provision is to afford each parent the opportunity to travel and, potentially, to have a full week's vacation away from home with the Child after allowing for such travel.

-16-

7.    Easter, Memorial Day, Independence Day and Labor Day:

(a)    In even-numbered years, Father shall have physical custody of the Child on Easter Sunday, Independence Day, and Thanksgiving Day, and Mother shall have physical custody of the Child on Memorial Day and Labor Day.

(b)    In odd-numbered years, Mother shall have physical custody of the Child on Easter Sunday, Independence Day, and Thanksgiving Day, and Father shall have physical custody of the Child on Memorial Day and Labor Day.

(c)    The times for such periods of holiday physical custody of the Child shall be from 6:00 p.m. the day before the holiday until 8:00 p.m. on the day of the holiday.

8.    Christmas:

(a)    In 2016, Mother shall have physical custody of the Child from 2:00 p.m. on December 24 until 2:00 p.m. on December 25, and Father shall have physical custody of the Child from 2:00 p.m. December 25 until 2:00 p.m. on December 26.

(b)    In 2017, the schedule shall reverse.

(c)    For the balance of the Child's Christmas break, Father shall have physical custody of the Child from December 26 to December 29, and Mother shall have physical custody of the Child from December 29 until the day before the school session begins in January.

-17-

9. Holiday and special day periods of physical custody of the Child shall have precedence over vacation periods and regular periods of physical custody of the Child. Vacation periods of physical custody of the Child shall have precedence over regular periods of physical custody of the Child.

10. Unless the parents reach an alternative agreement, the parent receiving physical custody of the Child shall provide the transportation.

11. All custody exchanges shall occur at the Manheim Township Police Department, 1840 Municipal Drive, Lancaster, Pennsylvania 17601 or, when the Child is being dropped off or picked up at the Child's school, at the Child's school.

12. Each parent shall permit reasonable telephone access to the Child by the other parent when the Child is in his or her physical custody. The Child shall be afforded privacy during the Child's telephone calls with a parent, and such calls shall not take place by way of a speaker telephone.

13. Each parent shall accommodate the reasonable requests of the other parent for alterations of any agreed upon schedule, as the circumstances and the best interests of the Child require.

14. Each parent shall encourage the Child to love and respect the other parent and shall not state, nor allow others to state, in the presence of the Child, derogatory comments about the other parent.

-18-

15. Each parent shall encourage the Child to have significant contacts with the other parent, and shall make certain that the Child is ready on time for the transfer of physical custody from one parent to another.

16. Each parent shall immediately notify the other by telephone of any serious illness or other emergency that may arise while the Child is in his or her physical custody.

## CONTEMPT

Mother's allegations that Father has willfully disobeyed the current Custody Order are dismissed for failure to prove willful disobedience required to establish a finding of contempt.

## FUTURE RELOCATION

IF YOU ARE PROPOSING TO RELOCATE TO ANOTHER AREA WITH THE CHILD WHO IS THE SUBJECT OF THIS ORDER, YOU MUST COMPLY WITH THE REQUIREMENTS OF SECTION 5337 OF THE PENNSYLVANIA CUSTODY LAW WHICH INCLUDES SENDING NOTICE OF YOUR PROPOSED MOVE TO EVERY OTHER INDIVIDUAL WHO HAS CUSTODY RIGHTS TO THE CHILD AND PROVIDING SPECIFIC INFORMATION CONCERNING YOUR RELOCATION. THE LAW MAY BE FOUND AT 23 Pa. C.S.A. § 5337. IF YOU DO NOT COMPLY WITH THE NOTICE PROVISION OR PROVIDE THE REQUIRED INFORMATION, THE COURT HAS THE ABILITY TO CONSIDER YOUR FAILURE AS AN ELEMENT IN THE CUSTODY OR RELOCATION DECISION.

-19-

**BY THE COURT:**

JEFFREY J. REICH
JUDGE

Attest:

Copies to:

M. Lucile Longo, Esquire
Honaman, Longo & Longo
15 North Lime Street
Lancaster PA   17602

Jozefa K. Jackson, Esquire
643 West Chestnut Street
Lancaster PA   17603

ORDER OR DECREE
NO. ___
ATTACHED DOCUMENT
THIS CASE
LANCASTER CO., PA
DATE: 3/7/16

-20-